COMMONWEALTH *vs.* DONALD MAYLOTT.

No. 04-P-1462.

Hampden. October 14, 2005. - January 30, 2006.

Present: RAPOZA, GRAHAM, & KATZMANN, JJ.

*Arrest. Resisting Arrest. Practice, Criminal,* Argument by prosecutor, Com-
ment by prosecutor.

The evidence at the trial of a criminal complaint was sufficient to convict the
   defendant of resisting arrest, where the defendant's conduct in stiffening
   his arms constituted an active, physical refusal to submit to the authority of
   the arresting police officers and opposition to their efforts to effect the ar-
   rest, and also presented a substantial risk of injury to them. [468-470]
At the trial of a criminal complaint charging the defendant with resisting ar-
   rest, the repeated use of the word "resisting" during the direct examination
   of the arresting police officers and in the Commonwealth's closing argu-
   ment, even if error, did not prejudice the defendant, where the officers
   described the defendant's behavior in great detail, and the judge gave a
   curative instruction explaining the legal meaning of the term "resisting ar-
   rest" and reminding the jury of their fact-finding role. [470]

COMPLAINT received and sworn to in the Springfield Division
of the District Court Department on November 5, 1999.

The case was tried before *Richard J. Carey*, J.

*Adriana Contartese* for the defendant.

*Sidney E. Reavey*, Assistant District Attorney, for the
Commonwealth.

KATZMANN, J. This is an appeal from the defendant's convic-
tion, following a jury trial in the District Court, of resisting ar-
rest, G. L. c. 268, § 32B. Arguing that the Commonwealth failed
to satisfy all elements of the charge, the defendant claims that
the judge erred in denying his motion for a required finding of
not guilty. He also claims reversible error because of the
repeated use of the word "resisting" during the Common-
wealth's case and closing argument. We affirm.

*Background.* This case arises out of a dispute between the tenant of an apartment building and the defendant, Donald Maylott, the building's maintenance person. Officer Reginald Miller of the Springfield police department was called to the apartment building on the evening of November 4, 1999, to investigate an alleged assault and battery.[1] Officer Miller arrived at the building and called his partner, Officer Brian Elliott, for assistance. The officers interviewed the downstairs tenant and then went to a second-floor apartment, where the defendant was working, to interview him about what had happened.

At trial, the officers testified that they attempted to interview the defendant, but that he was "extremely angry," "outraged," and "uncooperative," and was "flailing his arms" and swearing. The officers also testified that they made several attempts to get the defendant to tell his side of the story, but he was too agitated to talk with them. When the defendant continued to be uncooperative, the officers informed the defendant that he was being placed under arrest. At that point, the defendant "became even more angry" and started to yell louder. "He was moving his arms, flailing as he was yelling and screaming and Officer Miller and [Officer Elliot] approached him." Officer Miller took hold of the defendant's right hand in an attempt to handcuff him. Instead of complying with the officers' demands, the defendant "stiffened out his arm, and refused [their] advances to put his hands behind his back." Officer Elliott then grabbed for the defendant's left wrist or forearm with both his hands because the defendant was not "turn[ing] around" to "place himself in a position . . . to be handcuffed." The defendant again stiffened his arm. Holding the defendant by the arms, the officers faced him against a wall in order to protect themselves and to gain a physical advantage over him. The officers told the defendant "again and again, '[P]ut your hands behind your back.'" Officer Miller "forcefully swept" the defendant's arm behind his back and finally placed him in handcuffs. The

---

[1]The defendant was also charged with one count of assault and battery by means of a dangerous weapon (a door), but on the date of the trial the charge was dismissed for lack of prosecution.

defendant was then escorted, without incident, into the police cruiser.[2]

1. *Resisting arrest.* The statute at issue, G. L. c. 268, § 32B, inserted by St. 1995, c. 276, reads in pertinent part:

> "(a) A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by: (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another."

The defendant argues that the judge erred in denying his motion for a required finding of not guilty because the Commonwealth failed to present sufficient evidence to satisfy all elements of the crime. Specifically, he claims that his conduct of stiffening his arms was a natural reaction, and did not constitute the use of "physical force or violence," or "create[] a substantial risk of causing bodily injury" to the arresting officers, as required by G. L. c. 268, § 32B.[3]

Viewing the evidence in the light most favorable to the Commonwealth, a rational trier of fact could have found that the defendant's conduct amounted to resisting arrest as defined under either prong of G. L. c. 268, § 32B(*a*). See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). We reach this conclusion by reviewing the spectrum of conduct that has been considered in other decisions to amount to resisting arrest. In *Commonwealth* v. *Grandison*, 433 Mass. 135, 143 (2001), in response to an officer's efforts to arrest him, the defendant, who was shouting obscenities, "stiffened his arms and, for a second, was able to pull one of his arms free." It took four officers to handcuff the defendant, who "never complied with a request to put his hands behind his back" so that "he

---

[2]In his testimony, the defendant disputed the officers' accounts of the arrest, claiming that he had not been uncooperative and that the police officers just "dove at [him]," "grabbed [him,] and threw [him] into the wall." He testified that the officers never informed him that he was under arrest and never told him why he was being arrested.

[3]The defendant does not dispute the legality of his arrest.

could be handcuffed." *Id.* at 143-144. The court found that the type of resistance perpetrated by the defendant, especially at the moment he pulled his arm free, constituted using " 'any other means' that created a 'substantial *risk* of causing bodily injury' to the police officers." *Id.* at 145.

In *Commonwealth* v. *Katykhin*, 59 Mass. App. Ct. 261, 262 (2003), the defendant stiffened his body and began to pull away from the arresting officer, "starting a 'tug of war,' " when he was asked to get into the police cruiser. In that case, we held that the defendant's use of force "in opposition" to the arresting officer constituted resisting arrest under § 32B(*a*)(1), noting that that subsection did not require that the offending conduct pose a substantial risk of bodily injury to the officer. *Id.* at 263. By way of contrast, *Katykhin* posited and distinguished "purely passive conduct not involving the use or threat of force or violence, such as that characteristic of nonviolent protestors." *Id.* at 263 n.2. We stated that our opinion did "not address, in any way," such conduct. *Ibid.* Indeed, the Commonwealth has conceded that such passive conduct would not constitute resisting arrest.

In considering this spectrum, we conclude that the defendant's actions are of a similar tenor to that conduct deemed criminal in *Grandison* and *Katykhin*, and were substantially distant from purely passive conduct. As in *Grandison* and *Katykhin*, the defendant in this case was actively uncooperative in his behavior as he opposed the arresting officers' attempts to handcuff him. When the officers tried to question the defendant, his demeanor and actions were openly hostile, and his recalcitrant conduct did not end when the officers informed him that he was under arrest. To the contrary, it took the effort of two officers to consummate the arrest, and they were able to do so only after pushing the defendant against the wall, thus gaining a physical advantage over him. Although the defendant did not break free as in *Grandison*, or begin to pull away as in *Katykhin*, his conduct still represents an active, physical refusal to submit to the authority of the arresting officers, and opposition to their efforts to effect the arrest. While the defendant's exertion of force in an attempt to prevent his arrest may not have overcome the police officers, the circumstances also presented a substantial risk of injury to

them. In short, the evidence supports the conviction under either prong of G. L. c. 268, § 32B(*a*).

2. *Repeated use of the word "resisting."* The defendant argues that repeated use of the word "resisting" during the officers' direct examination and in the Commonwealth's closing argument usurped the jury's fact-finding role.

We review the disputed testimony for prejudicial error, *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), and "consider the challenged comments in light of the entire argument, the judge's instructions, and the evidence at trial," *Commonwealth* v. *Burns*, 49 Mass. App. Ct. 677, 679 (2000). In essence, the defendant claims that the use of the word "resisting" ran afoul of the general proscription against allowing testimony on the "ultimate issue" in a case, see Young, Pollets, & Poreda, Evidence § 704.1, at 507 (2d ed. 1998). While we think that the use of the word in the context of this case falls under the umbrella of permissible shorthand expression, see Liacos, Brodin, & Avery, Massachusetts Evidence §§ 7.4, 7.5, at 379-383 (7th ed. 1999), it would have been preferable for the prosecutor to avoid using the word in framing the questions.[4] In any event, even assuming arguendo that the use of the word was error, such error was harmless. The officers described the defendant's behavior in great detail. Moreover, the judge gave a curative jury instruction which explained the legal meaning of the term "resisting arrest" and reminded the jury of their fact-finding role in the trial, and their obligation to apply the law to the facts.

*Judgment affirmed.*

---

[4]We note that in *Commonwealth* v. *Grandison*, 433 Mass. at 144, the court, pointing to the evidence, disagreed with the defendant's claim that "the officers' characterization of the defendant's behavior as 'resisting' or 'struggling' is mere opinion." However, the court was neither presented with, nor did it address, the question of the propriety of using the word "resisting."