# United States Court of Appeals
## For the First Circuit

No. 06-2513

UNITED STATES OF AMERICA,

Appellee,

v.

MIGUEL ALMENAS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Torruella, Lipez and Howard,
Circuit Judges.

Claudia Leis Bolgen, with whom Bolgen & Bolgen, was on brief for appellant.
Timothy Q. Feeley, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

January 12, 2009

**HOWARD**, **Circuit Judge**.  After pleading guilty to selling crack cocaine, Miguel Almenas was sentenced -- pursuant to a downward departure -- to 192 months' imprisonment, 43 months below the bottom of the guideline sentencing range ("GSR").  Almenas appeals his sentence.  He argues primarily that the district court erroneously relied on his prior conviction for resisting arrest when sentencing him as a career offender.  He also challenges both the reasonableness of his sentence and the court's use of prior convictions that he alleges had not been sufficiently proven.  We reject all of Almenas's challenges and affirm his sentence.

## I.  Background

We provide the bulk of the facts here but include more where necessary for our discussion.

On three separate occasions in January of 2005, Miguel Almenas sold crack cocaine to an undercover DEA agent.  The total amount sold was 136 grams.  That April, he pled guilty to federal narcotics offenses in violation of 21 U.S.C. § 841(a)(1).

The pre-sentence report recommended that the career offender provision of the federal sentencing guidelines, U.S.S.G. § 4B1.1, govern Almenas's sentencing.  The report determined that Almenas qualified as a career offender because he had two prior felony convictions each of which was either a crime of violence or a controlled substance offense: (1) a 1991 Massachusetts conviction for possession of cocaine with intent to distribute and (2) a 2000 Massachusetts conviction for resisting arrest.

Over Almenas's protest that the latter was not a crime of violence, the district court accepted the probation office's recommendation and categorized Almenas as a career offender. The court determined that Massachusetts's statutory definition of resisting arrest qualified the offense categorically as a "crime of violence" under the guidelines.

After arriving at the relevant GSR under the career offender provision -- 262 to 327 months -- the district court departed downward based on its conclusion that Almenas's criminal history category substantially over-represented the seriousness of his criminal history.[1] The new GSR had a low end of 235 months. The mandatory minimum was 120 months. The court then requested argument regarding whether either a further downward departure under U.S.S.G. § 5K2.0 -- based on Almenas's physical, mental and emotional conditions -- or a non-guideline sentence was in order.

After hearing these arguments, the court elected to depart downward under § 5K2.0 and imposed a sentence of 192 months' imprisonment. In brief (we will return to the details), the court stressed that a departure under § 5K2.0 was justified given Almenas's chronic neck pain and his mental and emotional condition, but that imposing only the mandatory minimum of 120 months, as Almenas requested, would fail to promote appropriate respect for the law. The court noted that it would impose the same sentence as a non-guideline sentence. This appeal followed.

---

[1] As provided for under U.S.S.G. § 4A1.3(b).

## II. Discussion

Almenas raises three challenges to his sentence. His first and primary challenge relates to the court's use of his prior resisting-arrest conviction to categorize him as a career offender for sentencing purposes.[2] This challenge has two parts. He argues that his resisting-arrest conviction does not qualify him as a career offender because it is neither (1) a "prior felony conviction" nor (2) a "crime of violence." Almenas's second and third challenges regard the reasonableness of his sentence and the district court's use of his prior convictions to enhance his sentence where those convictions had not been proved to a jury or admitted by Almenas. Aside from his third argument, which we may summarily dispatch up front, we address his arguments sequentially.[3]

---

[2] Almenas acknowledges that his 1991 drug conviction may be counted as a predicate offense.

[3] Almenas's third argument is that his Sixth Amendment rights were violated because the court used his two prior convictions to enhance his sentence where the facts of both prior convictions underlying that determination were not charged by the indictment, found beyond a reasonable doubt, or admitted by Almenas. This argument cannot succeed. The Supreme Court has not abandoned its holding in Almendarez-Torres v. United States, 523 U.S. 224 (1998). For purposes of enhancing the defendant's sentence, the Constitution does not require the "fact" of a prior conviction to be charged in the indictment and either proven to a jury beyond a reasonable doubt or admitted by the defendant. Id.; see also James v. United States, 127 S. Ct. 1586, 1600 n.8 (2007). Accordingly, we are bound to follow this precedent unless the landscape changes. See United States v. Jimenez-Beltre, 440 F.3d 514, 520 (1st Cir. 2006) (citing United States v. Ivery, 427 F.3d 69, 75 (1st Cir. 2005)).

## A.  Use of resisting-arrest conviction for sentencing purposes

Whether a prior conviction qualifies as a predicate offense under U.S.S.G. § 4B1.1 is a question of law that we review de novo.  United States v. Santos, 363 F.3d 19, 22 (1st Cir. 2004).[4]

A defendant is categorized as a career offender if three criteria are met:  (1) the court is sentencing the defendant for a felony that is either a crime of violence or a controlled substance offense; (2) the defendant was at least eighteen when he committed the felony; and (3) the defendant has been previously convicted of two unrelated felonies each of which was either a crime of violence or a controlled substance offense.  U.S.S.G. § 4B1.1(a).

The focus in this case is on the third criterion.  We conclude that the district court correctly determined that Almenas's prior resisting-arrest conviction qualified both as a "prior felony conviction" and as a "crime of violence."  We address both determinations, and Almenas's challenges to them, in order.

### 1.  Prior felony conviction

The Guideline commentary defines "prior felony conviction" as:  "[A] prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of   whether such offense is specifically designated as a felony and regardless of the actual sentence imposed."  U.S.S.G.

---

[4]  We disagree with the government's contention that the plain error standard governs Almenas's argument concerning the court's treatment of his resisting-arrest conviction as a crime of violence.  Almenas sufficiently presented and preserved the issue below, and the district court acknowledged as much during the sentencing hearing.

-5-

§ 4B1.2, cmt. n.1.

Here, the district court properly determined that Almenas's resting arrest conviction was a "prior felony conviction" because under Massachusetts law, resisting arrest, a misdemeanor offense, carries a punishment of up to two and one-half years in a jail or the house of correction. See Mass. Gen. Laws ch. 268, § 32B(d).

Neither the fact that Massachusetts law categorizes resisting arrest as a misdemeanor, nor the fact that Almenas was not actually imprisoned for a term exceeding one year, affects our analysis. A crime "punishable" by imprisonment for a term exceeding one year is a felony for purposes of the career offender provision, "regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." See U.S.S.G. § 4B1.2, cmt. n.1.

Almenas argues that a different section of the guidelines, § 4A1.2(c), suggests that resisting arrest is not a felony for purposes of the career offender provision. Section 4A1.2(c) details which prior sentences must be counted and which must be excluded for purposes of computing criminal history. It also cites "resisting arrest" as an example of a misdemeanor or petty offense and further notes that such offenses cannot be counted for purposes of computing criminal history if the sentence actually imposed was less than one year probation or thirty days in prison. Consequently, Almenas argues that because § 4A1.2(c) is made applicable to the career

offender provision through § 4B1.2(c),[5] and because he received only a fine for his resisting-arrest conviction, his conviction cannot qualify as a "prior felony conviction."  At the least, he contends, § 4A1.2(c)'s reference to resisting arrest as a misdemeanor or petty offense creates an ambiguity triggering the rule of lenity. Accordingly, he argues, we must resolve the ambiguity in his favor.

We disagree.  Section 4A1.2(c)'s own language, when read in conjunction with another guideline section --  § 4A1.2(o) -- makes evident that Almenas's resisting-arrest conviction qualifies as a prior felony conviction.  Section 4A1.2(c)'s first sentence reads, "<u>Sentences for all felony offenses are counted</u>," before going on to list "misdemeanor and petty offenses" such as resisting arrest.  U.S.S.G. § 4A1.2(c) (emphasis added).  When this language is read with reference to § 4A1.2(o), which provides that "for the purposes of [section] 4A1.2(c), a 'felony offense' means any federal, state, or local offense punishable by death or a term of imprisonment exceeding one year, regardless of the actual sentenced imposed,"[6] any ambiguity is resolved.  Resisting arrest qualifies as

---

[5] Almenas argues that it is applicable as follows:  U.S.S.G. § 4B1.2 is the definition section for terms used in § 4B1.1. Subsection (c) provides in relevant part:

> The term 'two prior felony convictions' means . . . (2) the sentences for at least two aforementioned felony convictions are counted separately under the provisions of . . .  § 4A1.1(a), (b), or (c).  <u>Id.</u>

U.S.S.G. § 4A1.1, in turn, is read together with § 4A1.2.   <u>See</u> Commentary to U.S.S.G. § 4A1.1

[6] This definition of a "felony offense" mirrors the definition of "prior felony conviction" in § 4B1.2's guideline commentary.

a "prior felony conviction" according to the career offender provision's guideline commentary and as a "felony offense" for purposes of § 4A1.2(c). In order for a resisting-arrest offense to qualify as a misdemeanor or petty offense for purposes of § 4A1.2(c), it would have to be punishable by imprisonment for a term <u>under</u> one year. Or, put differently, the offense would have to fall outside of the guideline definition of a felony. That is not the case here.

## 2. Crime of violence

Under the guidelines, an offense will qualify as a crime of violence if it is punishable by imprisonment for a term exceeding one year and either: (1) has as an element the "use, attempted use, or threatened use of physical force against the person of another" or (2) "is burglary of a dwelling, arson, or extortion, involves use of explosives, or <u>otherwise involves conduct that presents a serious potential risk of physical injury to another</u>." U.S.S.G. § 4B1.2(a)(1), (2) (emphasis added). The underscored statutory language is referred to as either the "otherwise clause" or the "residual clause." <u>United States</u> v. <u>Giggey</u>, 2008 U.S. App. LEXIS 26407, at * 14 (1st Cir. Dec. 28, 2008); <u>United States</u> v. <u>Williams</u>, 529 F.3d 1, 4 (1st Cir. 2008).

To determine whether a defendant's prior offense falls within the guideline definition of a "crime of violence" we take a formal, categorical approach. <u>Giggey</u>, 2008 U.S. App. LEXIS 26407 at * 29; <u>United States</u> v. <u>Winn</u>, 364 F.3d 7, 9 (1st Cir. 2004). This approach, depending on the offense at issue, has either one or two

-8-

steps. The first step is always the same. We compare the legislature's definition of the relevant offense with the guideline definition of a "crime of violence." Id. This comparison "is restricted to the statutory definition . . . of the prior offense . . . , without regard to the particular facts underlying the conviction." United States v. Meader, 118 F.3d 876, 882 (1st Cir. 1997); see also Giggey, 2008 U.S. App. LEXIS 26407, at * 29. "If [we determine] that a violation of the statute in question necessarily involves each and every element of a violent crime, then the offense is deemed a crime of violence and [our] inquiry is at an end." Williams, 529 F.3d at 4. If, however, "the statute's text is broad enough to criminalize both violent and non-violent conduct," we must take another step to determine whether the defendant engaged in the crime's violent variety. Id.; United States v. Winter, 22 F.3d 15, 18 (1st Cir. 1994). In so doing, we may "[examine] documents such as charging papers or jury instructions in order to flesh out a predicate offense inquiry." Winn, 364 F.3d at 9 (citation omitted); see also Shepard v. United States, 544 U.S. 13, 26 (2005) (identifying documents to which a court may refer in such instances). The district court in this case concluded that the resisting-arrest statute criminalized only violent conduct and thus did not take the second step.

We start by considering the Massachusetts statutory definition of resisting arrest. The crime is defined as follows:

> A person [resists arrest] if he knowingly prevents or attempts to prevent a police officer, acting under color of his official

authority, from effecting an arrest of the actor or another by:

> (1) using or threatening to use physical force or violence against the police officer or another; or

> (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another.

Mass. Gen. Laws, ch. 268, § 32B.

The first method of resisting arrest fits squarely within the definition of a crime of violence. Under this method, a person resists arrest by "using or threatening to use physical force or violence." Id.; see U.S.S.G. § 4B1.2(a)(1).

The second method of resisting arrest does not explicitly involve the "use, attempted use, or threatened use of physical force" and therefore our focus turns to the residual clause. We must decide whether this method of resisting arrest, "involves conduct that presents a serious potential risk of physical injury to another." See U.S.S.G. § 4B1.2(a)(2).

Facially, the second method of resisting arrest falls safely within the residual clause. It invariably creates a "serious potential risk of physical injury to another" because, by its very definition, it creates a "substantial risk of causing bodily injury to a police officer or someone else." See United States v. Hollis, 447 F.3d 1053, 1054-1055) (8th Cir. 2006). But, after the Supreme Court's decision in Begay v. United States, 128 S. Ct. 1581 (2008), more analysis is needed. See Williams, 529 F.3d at 6.[7] After

---

[7] Even though the Court in Begay was interpreting the violent felony definition of the Armed Career Criminal Act (ACCA), 18

-10-

Begay, to fall within the residual clause, the offense at issue must both:  (i) pose a degree of risk that is similar to the degree of risk posed by the enumerated offenses -- namely arson, burglary, extortion, and offenses involving the use of explosives -- and (ii) be similar "in kind" to those offenses.  128 S. Ct. at 1585; see also United States v. Herrick, 545 F.3d 53, 58 (1st Cir. 2008).  An offense will be similar "in kind" to the enumerated offenses if it "typically involve[s] purposeful, 'violent,' and 'aggressive' conduct."  Id. at 1586 (citation omitted); Williams, 529 F.3d at 7 (citation omitted).

Even after Begay, the second method of resisting arrest still qualifies as a crime of violence under the residual clause. First, the crime poses a degree of risk roughly similar to the risk posed by the enumerated offenses.  In fact, the degree of risk posed by both methods of resisting arrest is arguably greater than the risk posed by the enumerated offenses.  Unlike the enumerated offenses, resisting arrest necessarily involves resisting the authority of a police officer, an official charged with defending the public.  Because the police officer is duty-bound to effectuate the arrest, the offense engenders a significant risk of conflict and, concomitantly, a significant risk of injury.  See United States v. Fernandez, 121 F.3d 777, 780 (1st Cir. 1997) (crime of simple assault and battery on a police officer presents a serious potential

U.S.C. § 924(e)(2)(B), and though much of its analysis appeared specific to that statute, "for both prudential and precedential reasons, we have read that statute and the almost parallel guideline language at issue [in the guidelines definition of crime of violence] as being in pari passu."  Williams, 529 F.3d at 6.

-11-

risk of injury in part because of likelihood officer will react and attempt to subdue offender).

Second, resisting arrest by this method involves purposeful, "violent," and "aggressive" conduct. The purposefulness requirement is easily met. Both methods of resisting arrest require the offender to act knowingly. See Begay, 128 S. Ct. at 1586 (crimes involving use of explosives are purposeful because "the word use . . . most naturally suggests a higher degree of intent than negligent or merely accidental conduct") (quoting Leocal v. Ashcroft, 543 U.S. 1, 9 (2004) (some internal quotations omitted))). And this method of resisting arrest is by its nature both "aggressive" and "violent" -- it involves a refusal to yield to a public official's exercise of authority and creates a substantial risk of injury. To cinch matters, we can say confidently that the nonpassive resisting arrest envisioned by the statute is at least as "aggressive" and "violent" as burglary. See Williams, 529 F.3d at 7 n.7 ("Burglary, for instance, can be described as purposeful but not, at least in most instances, as purposefully violent or necessarily aggressive."). After all, when resisting arrest the offender is knowingly engaging in conflict with another.

Almenas, for his part, advances two arguments. First, he says that the district court should have at least proceeded to the second step of the categorical approach because the Massachusetts resisting-arrest statute effectively criminalizes both violent and non-violent conduct. The statute does so, he contends, because an "insubstantial use of force" is enough to convict a person under the

statute. In support of this argument, Almenas cites Commonwealth v. Maylott, 65 Mass. App. Ct. 466 (Mass. App. 2006). In that case, a Massachusetts appeals court determined that a defendant's stiffening of his arm to avoid being handcuffed was sufficient to convict him for resisting arrest under either definition of the Massachusetts statute. Id. at 469-470.[8]

In light of our discussion above, we do not believe stiffening one's arm to avoid being handcuffed can be characterized as "non-violent," or, for that matter, "non-aggressive." Moreover, two Massachusetts cases, including Maylott itself, have concluded that such conduct was sufficient to create a substantial risk of injury to a police officer or someone else. See Maylott, 65 Mass. App. Ct. at 469-70 ("While the defendant's [stiffening of his arm] may not have overcome the police officers, the circumstances . . . present[ed] a substantial risk of injury to them."); see also Commonwealth v. Garrison, 433 Mass. 135 (2001) (holding that defendant's stiffening of his arm to avoid arrest was sufficient to convict him for resisting arrest because it created a "'substantial risk of bodily injury' to the police officers"). We agree with the analysis set forth in those cases and conclude that the force Almenas describes is sufficient to create a serious potential risk of injury to another.[9]

---

[8] "Passive resistance," characteristic of non-violent protestors, does not qualify as resisting arrest under this statute. The Commonwealth of Massachusetts has conceded as much. See Maylott, 65 Mass. App. Ct. at 469.

[9] Although Almenas, in arguing that the statute criminalizes non-violent conduct, latches onto the arm-stiffening example, a

-13-

Almenas's second argument relies on Begay, and specifically, on Begay's requirement that the offense at issue be similar in kind to § 4B1.2(a)(2)'s enumerated offenses. He argues that resisting arrest is not similar "in kind" to those offenses because those offenses are all "property crime viewed as likely to result in collateral injury to persons." Resisting arrest, he notes, has nothing to do with property.

The distinction Almenas draws is immaterial. An offense will be similar "in kind" to the enumerated offenses if it "typically involves[s] purposeful, 'violent,' and 'aggressive' conduct" regardless of whether property is involved. See Begay, 128 S. Ct. at 1586. In fact, in Williams we concluded that even though the offense at issue had nothing to do with property -- it concerned the transport of a minor across state lines for prostitution --

marginally more persuasive argument is available to him. Under Massachusetts law, certain types of flight from arrest will likely qualify as resisting arrest. See Commonwealth v. Grant, 71 Mass. App. Ct. 205, 210 n.2 (Mass. App. 2008) ("There is uncertainty in the case law and commentary regarding the circumstances in which flight on foot may constitute resisting arrest."). One could argue that, in at least some cases, a defendant's flight from arrest is neither aggressive nor violent. This, however, fails to alter our conclusion. In determining whether an offense will categorically qualify as a crime of violence, the focus must be on the "mine-run of conduct that falls within the heartland of the statute." United States v. De Jesus, 984 F.2d 21, 24 (1st Cir. 1993); see also Giggey, 2008 U.S. App. LEXIS 26407, at * 37. Resisting arrest is typically both violent and aggressive. See Begay, 128 S. Ct. at 1586 (noting that enumerated crimes all "typically" involve purposeful, violent and aggressive conduct). And, moreover, if a defendant's flight from arrest is to qualify as resisting arrest under Massachusetts law, it must either involve the use or threatened use of force or create a substantial risk of injury to a police officer or another. See Mass. Gen. Laws, ch. 268, § 34B.

-14-

it nonetheless was similar in kind to the enumerated offenses.  529
F.3d at 2, 7  (citation omitted).

### B.  Reasonableness of Almenas's sentence

Almenas argues that even if the district court correctly categorized him as a career offender, his 192-month sentence is unreasonable.  He contends that the court did not adequately explain the chosen sentence.  In particular, he argues that the court's explanation suggests that it insufficiently considered factor (1) of § 3553(a) relating to the "history and characteristics of the defendant."  Because Almenas failed to raise an objection to the sentencing procedure below, his challenge is governed by the plain error standard.[10]  United States v. Gilman, 478 F.3d 440, 445 (1st Cir. 2007).

Our review of sentences has two components.  We must satisfy ourselves that the sentence imposed is both (i) procedurally sound[11] and (ii) substantively reasonable.  Id. at 597; see also United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008).  Our focus

---

[10] Under this standard Almenas bears the burden of showing: "(1) that an error occurred, (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

[11] A sentence is procedurally sound so long as the district court did not commit a procedural error in arriving at the sentence. Examples of procedural errors include: "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range."  Gall, 128 S. Ct. at 597.

in this case is on the procedural component.  See Gall, 128 S. Ct. at 597 (noting that a court's failure to adequately explain the chosen sentence is a procedural error).

A district court's explanation for a chosen sentence must be "reasoned and case-specific." Gilman, 478 F.3d at 446.  Though it must reflect that the court considered the § 3553(a) factors,[12] id. at 445, the court need not address these factors "one by one,

---

[12] Generally, § 3553(a) directs a sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for-

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

(5) any pertinent policy statement [in the guidelines]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

in some sort of rote incantation when explicating its sentencing decision." United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006); see also United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006) (noting court should ordinarily identify the main factors upon which it relies) (citation omitted).[13]

The district court's explanation is procedurally adequate. It reflects a thoughtful consideration of the relevant § 3553(a) factors including the first factor concerning the defendant's "history and characteristics." The court addressed Almenas's personal history, noting that he had "unfortunate circumstances," and extensively discussed his personal characteristics remarking, that Almenas "seem[ed] to have a combination of physical and mental disabilities" including "chronic neck pain," "chronic low back pain" and "[severe] depression and psychosis." In fact, the court referred to Almenas's personal history and characteristics as the motivating force behind its grant of a substantial downward departure under U.S.S.G. § 5K2.0. Additionally, the court touched on other § 3553(a) factors during its explanation. It noted that a lower sentence would fail to promote appropriate respect for the law, see § 3553(a)(2)(A), and that it was taking into account the guidelines' severe penalties for crack cocaine offenses. See § 3553(a)(4). In summarizing its decision, the court stated that: (1) it "would impose[] the same sentence[] as a non-Guideline

---

[13] Almenas appears to suggest that the court erred because it neglected to read all seven of the § 3553(a) factors during sentencing. This argument is fatally flawed. We have never required a district court to march out each § 3553(a) factor one by one in the process of imposing a sentence. Dixon, 449 F.3d at 205.

sentence under Section 3553(a)"; (2) it imposed a sentence "necessary to achieve the purposes of sentencing under Section 3553(a)"; and (3) it had "considered the sentencing factors set forth at 18 U.S.C. Section 3553(a)." In sum, the court gave an adequate explanation for the 192-month sentence which honored the competing concerns of mercy and punishment.[14]

For the reasons discussed above, the sentence is affirmed.

**AFFIRMED**.

---

[14] Almenas filed a letter under Fed. R. App. P. 28(j) calling our attention to the Supreme Court's decision in Kimbrough v. United States, 128 S. Ct. 558 (2007) which issued after this case was submitted. In Kimbrough, the Court held that a district court may deviate from a properly calculated guideline sentencing range based on its disagreement with the crack/powder sentencing ratio disparity. Id. at 570. Although Almenas was sentenced for selling crack, he neither raised the crack/powder disparity issue below nor initially in this court. "A party cannot normally raise a new issue in a Rule 28(j) filing." United States v. Barbour, 393 F.3d 82, 93 (1st Cir. 2004) (citation omitted). However, where a party raises such an issue "in response to a potentially crucial Supreme Court decision that issued only after briefing and oral argument were completed," and no waiver has occurred, plain error review is appropriate. See United States v. Morgan, 384 F.3d 1, 8 (1st Cir. 2004).

To satisfy the plain error standard in this context, Almenas must "demonstrate a reasonable probability that he would have received a more lenient sentence had the district court considered the crack cocaine disparity when sentencing [him." United States v. Matos, 531 F.3d 121, 122 (1st Cir. 2008). He has failed to do so here. And, we note further, that when sentencing Almenas the district court made manifest that it would have imposed the same sentence as a non-guideline sentence.