NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-787                                          Appeals Court
22-P-888
22-P-897


COMMONWEALTH  vs.  MANOLO M., a juvenile
(and three companion cases[1]).


Nos. 22-P-787, 22-P-888, & 22-P-897.

Plymouth.     September 8, 2023. - December 15, 2023.

Present:  Green, C.J., Desmond, & Hand, JJ.


Delinquent Child.  Juvenile Court, Delinquent child.  Assault
    and Battery.  Police Officer.  Practice, Criminal, Required
    finding, Instructions to jury.  Self-Defense.  Resisting
    Arrest.  Constitutional Law, Freedom of speech and press.
    Probable Cause.


Complaints received and sworn to in the Plymouth County
Division of the Juvenile Court Department on October 4, 2019.

The cases were tried before Dana Gershengorn, J.


Eva G. Jellison for Frederick F.
Melissa Allen Celli for Angela A.

_____

[1] Commonwealth vs. Frederick F., a juvenile (22-P-787);
Commonwealth vs. Angela A., a juvenile (22-P-897); and
Commonwealth vs. Manolo M., a juvenile (22-P-888).  We adopt the
same pseudonyms for the juveniles as used by the Supreme
Judicial Court in Commonwealth v. Manolo M., 486 Mass. 678
(2021).

Michelle Menken for Manolo M.
Elizabeth A. Mello Marvel, Assistant District Attorney, for the Commonwealth.

GREEN, C.J.  After a trial in the Juvenile Court, a jury adjudicated three juveniles, Manolo M., Frederick F., and Angela A., delinquent on the charge of resisting arrest and also adjudicated Manolo delinquent on the charge of assault and battery on a police officer (ABPO).[2]  On appeal, the juveniles argue that the evidence was insufficient to support each adjudication.  Manolo and Angela also argue that the jury instructions were deficient in various respects.  We conclude that an error in the self-defense instruction on the offense of ABPO created a substantial risk of a miscarriage of justice, requiring that we vacate Manolo's adjudication with respect to that offense.  We affirm the juveniles' adjudications for resisting arrest.

The incidents giving rise to the charges leading to the present appeals arose out of a somewhat volatile gathering of teenagers following an early dismissal of Brockton high school students from school, as generally described in Commonwealth v.

---

[2] All other charges against the juveniles were dismissed prior to trial consistent with the decision in Manolo M., 486 Mass. at 694-695.

Manolo M., 486 Mass. 678, 679-681 (2021).[3]  We address the juveniles' various claims of error in turn, incorporating additional factual details as necessary in our discussion of each claim.

1.  Manolo.  a.  ABPO.  i.  Motion for required finding. Manolo first contends that his adjudication on the ABPO charge must be reversed because there was insufficient evidence that he touched the police officer.

"Challenges to the sufficiency of the evidence are evaluated under the Latimore standard, that is, whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. Witkowski, 487 Mass. 675, 679 (2021), quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  Where, as here, the juvenile moved for a required finding at the close of the Commonwealth's case and renewed the motion at the close of all evidence,

> "[w]e consider the state of the evidence at the close of
> the Commonwealth's case to determine whether the
> defendant's motion should have been granted at that time.
> We also consider the state of the evidence at the close of

---

[3] Though the factual summary included in that opinion was drawn solely from the police reports, and the juveniles contested the characterization of the events in those reports, see Manolo M., 486 Mass. at 679 n.4, the general contours of the description in that opinion finds support in the evidence at the subsequent trial.

all the evidence, to determine whether the Commonwealth's position as to proof deteriorated after it closed its case" (citation omitted).

Commonwealth v. Copeland, 481 Mass. 255, 260 (2019).

To prove an assault and battery, the Commonwealth must prove "that the [juvenile] touched the victim without having any right or excuse to do so and that the [juvenile]'s touching of the victim was intentional." Commonwealth v. Mitchell, 67 Mass. App. Ct. 556, 564 (2006). Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to establish the following. Manolo tried to run past Brockton police Officer Daniel Vaughn to check on his friend who was engaged in a struggle with other officers. Vaughn pushed Manolo back. Manolo began to rock back and forth in front of Vaughn with his fists up and stated, "let's go mother f'er, let's go." Manolo then swung his closed fist at Vaughn's head, and Vaughn "blocked" that punch.[4] From that testimony, a reasonable juror

---

[4] The testimony concerning the blocked punch was elicited on cross-examination. As this court previously acknowledged, "[o]ur cases do not specify whether testimony on cross-examination of the Commonwealth's witness is considered part of the Commonwealth's case-in-chief for purposes of a directed verdict, or is only to be included in the calculus of adequacy in a reappraisal of all the evidence after the defendant has rested." Commonwealth v. Ruano, 87 Mass. App. Ct. 98, 103 n.10 (2015). We conclude that such testimony can be considered as part of the Commonwealth's case-in-chief for purposes of a required finding. See Copeland, 481 Mass. at 260 (required finding motion requires consideration of "the state of the evidence at the close of the Commonwealth's case" [citation omitted]). Cf. Commonwealth v. Mauricio, 477 Mass. 588, 597

could have concluded that Manolo committed an assault and battery by touching Vaughn while attempting to land a punch. Cf. Webster's Third New International Dictionary 235 (2002) ("block" means "to obstruct or interfere with [an opponent, his play, or his movement] by bodily contact").

ii. Self-defense instruction. Manolo further argues that the judge erred in including the language pertaining to deadly force in the self-defense instruction, and that the judge should have provided instruction on defense of another. Because Manolo did not object, we review for a substantial risk of a miscarriage of justice. See Commonwealth v. Souza, 492 Mass. 615, 635 (2023).

"To decide whether an error creates a substantial risk of a miscarriage of justice, we must determine 'if we have a serious doubt whether the result of the trial might have been different

---

(2017) ("In determining the sufficiency of the evidence, we consider 'the evidence in its entirety, including, not excluding, that admitted [at] trial but found inadmissible on appeal'" [citation omitted]). To the extent that Manolo asserts that his trial counsel was ineffective for eliciting testimony about the blocked punch on cross-examination, Manolo did not raise this claim through a new trial motion, and this is not one of the "exceptional" circumstances where such a claim can be resolved on direct appeal. Commonwealth v. Zinser, 446 Mass. 807, 809 n.2 (2006). See Commonwealth v. Davis, 481 Mass. 210, 222 (2019) (motion for new trial preferred method of raising ineffective assistance of counsel claim). In light of our conclusion that Manolo's adjudication for ABPO must be vacated on other grounds, we do not otherwise address his ineffective assistance claim.

had the error not been made'" (citation omitted).  Commonwealth

v. Desiderio, 491 Mass. 809, 810 (2023).

> "In making this determination, we consider four factors,
> where applicable:  '[(1)] the strength of the
> Commonwealth's case, [(2)] the nature of the error, [(3)]
> the significance of the error in the context of the trial,
> and [(4)] the possibility that the absence of an objection
> was the result of a reasonable tactical decision'"
> (citation omitted).

Id.

On the offense of ABPO, the judge correctly determined that

Manolo was entitled to a self-defense instruction including the

use of nondeadly force.  However, in delivering the supplemental

instruction on the reasonable apprehension requirement, the

judge included a portion of the model instructions pertaining to

circumstances where the use of deadly force is at issue.  See

Instruction 9.260 of the Criminal Model Jury Instructions for

Use in the District Court (2009).[5]  Because use of deadly force

was not at issue in this case, the inclusion of the phrase "of

great bodily harm or death" in the instruction was error.  See

---

[5] Specifically, the judge instructed,

"A person cannot lawfully act in self defense unless he is
attacked or is immediately about to be attacked.  The
Commonwealth may prove that the juvenile did not act in
self defense by proving beyond a reasonable doubt that
there was no overt act, either words, a gesture, or some
other action, that gave rise to a reasonable belief of
attack, or immediate danger of great bodily harm or death"
(emphasis added).

Commonwealth v. Noble, 429 Mass. 44, 46 (1999) (nondeadly force includes "force of one's fists, hands, and arms").

We accordingly consider the significance of the error in the context of the trial. Whether Manolo acted in self-defense, including the degree of risk faced by Manolo, was a live issue at trial. Defense counsel argued that, in light of the size disparity between Vaughn and Manolo (Vaughn was eight inches taller and 100 pounds heavier), the injuries that Manolo suffered from the incident, and the "hard takedown" that twice caused Manolo to fall to the ground, Manolo was entitled to protect himself. The Commonwealth's evidence establishing that Manolo did not act in self-defense was not overwhelming, and required resolution by the fact finder. See Desiderio, 491 Mass. at 817 (appellate court's role is "not to sit as a second jury" [citation omitted]). The effect of the erroneous instruction materially lowered the Commonwealth's burden of proof; by virtue of the erroneous instruction the Commonwealth was able to prove that Manolo did not act in self-defense by proving there was "no overt act . . . that gave rise to a reasonable belief of attack, or immediate danger of great bodily harm or death" (emphasis added). See Commonwealth. v. Baseler, 419 Mass. 500, 503-504 (1995) (instruction on self-defense relating to deadly force on charge of assault and battery impermissibly lowered Commonwealth's burden of proof). See also

Commonwealth v. Walker, 443 Mass. 213, 217 (2005) (standards for use of deadly and nondeadly force are "distinct, self-contained definitions of self-defense"); Commonwealth v. Pike, 428 Mass. 393, 395 (1998) ("The right to use nondeadly force arises at a 'somewhat lower level of danger' than the right to use deadly force" [citation omitted]).  Finally, there is no realistic possibility that defense counsel's failure to object was a reasonable tactical decision.  See Desiderio, 491 Mass. at 819-820 (no reasonable tactical decision to fail to object to instructions relieving Commonwealth of burden to prove required element beyond reasonable doubt).

We are mindful that "[s]elf-defense is a sensitive part of the jury instructions in a criminal trial, and inappropriate language in the instructions can readily lead to a result in which an appellate court lacks confidence" (citation omitted).  Commonwealth v. Cataldo, 423 Mass. 318, 327 (1996).  The erroneous instruction in the present case created a substantial risk of a miscarriage of justice and, as a result, Manolo's adjudication for ABPO must be vacated.[6]

---

[6] To the extent Manolo also claims error with respect to the judge's failure to include a defense of another instruction, we disagree based on the absence of evidence that Manolo attempted to intervene on his friend's behalf.  Manolo's own testimony was that he did not intend to interfere in the struggle between his friend and the officers when he attempted to run past Vaughn; he merely wanted to "check on" his friend and "see if he was okay."

b.  Resisting arrest.  On the charge of resisting arrest,

Manolo argues that there was insufficient evidence that he

offered resistance at the time Vaughn was effectuating his

arrest.

> "A person commits the crime of resisting arrest if he
> knowingly prevents or attempts to prevent a police officer,
> acting under color of his official authority, from
> effecting an arrest of the actor or another, by:  (1) using
> or threatening to use physical force or violence against
> the police officer or another; or (2) using any other means
> which creates a substantial risk of causing bodily injury
> to such police officer or another."

G. L. c. 268, § 32B (a).  "[T]he crime . . . is committed, if at

all, at the time of the 'effecting' of an arrest."  Commonwealth

v. Grant, 71 Mass. App. Ct. 205, 208 (2008), quoting

Commonwealth v. Grandison, 433 Mass. 135, 145 (2001).  "An

arrest is effected when there is (1) 'an actual or constructive

seizure or detention of the person, [2] performed with the

intent to effect an arrest and [3] so understood by the person

detained.'"  Grant, supra, quoting Grandison, supra.  "The

standard for determining whether a defendant understood that he

---

We likewise reject Manolo's argument that the judge's decision
not to instruct on the "reasonable juvenile standard" was
prejudicial error.  That standard has been considered in the
context of juvenile sentencing, see Commonwealth v. Odgren, 483
Mass. 41, 48 (2019), and in the context of Miranda warnings, see
Commonwealth v. A Juvenile, 402 Mass. 275, 277 (1988), but not
in the context of the use of nondeadly force in self-defense.
In any event, in light of the absence of any evidence on this
issue at trial, we discern no error in the judge's decision to
omit the proposed instruction.

was being arrested is objective -- whether a reasonable person in the defendant's circumstances would have so understood." Grant, supra.

After the events described above, Vaughn kicked Manolo, Manolo approached again, and both fell to the ground. Vaughn was "trying to place [Manolo] under arrest." Vaughn explained, "I was telling him he was under arrest, and at that point, another officer arrived and assisted me in placing him in handcuffs." That other officer, Brockton school police Officer Spencer Benoit, came to assist after he observed "Vaughn having an altercation with a student from the high school, and [Vaughn] was trying to get him to comply with his commands, telling him [to] place his hands behind his back." Benoit "assisted with grabbing an arm and putting the hand behind [Manolo's] back so Officer Vaughn could apply handcuffs." A reasonable juror could conclude from this testimony that Manolo was actively resisting Vaughn's efforts to effectuate his arrest after being advised by Vaughn that he was under arrest.[7] See Grandison, 433 Mass. at 143-145 (evidence of resisting arrest sufficient when as officer tried to handcuff him, defendant "was shouting obscenities, stiffened his arms and, for a second, was able to pull one of

---

[7] This inference was bolstered by Manolo's own testimony that while on the ground, "multiple officers [were] trying to arrest [him]."

his arms free," never complied with request to put hands behind back, and ultimately required two more officers to assist in getting arms behind back).  See also Commonwealth v. Maylott, 65 Mass. App. Ct. 466, 468-469 (2006); Commonwealth v. Katykhin, 59 Mass. App. Ct. 261, 262-264 (2003).

2.  Frederick.  Frederick argues that the judge erred in denying his pretrial motion to dismiss the criminal complaint on the charge of resisting arrest, and in denying his motions for a required finding on that charge at the close of the Commonwealth's case and at the conclusion of trial.[8] Specifically, he argues that the officers lacked a good faith basis to believe that Frederick committed a crime when they attempted to arrest him.

To support an adjudication of delinquency on the offense of resisting arrest, the Commonwealth must prove that "the officers acted 'under color of [their] official capacity' in attempting the arrest" (citation omitted).  Commonwealth v. Urkiel, 63 Mass. App. Ct. 445, 453 (2005).  "A police officer acts under the color of his official authority when, in the regular course of assigned duties, he is called upon to make, and does make, a judgment in good faith based upon surrounding facts and circumstances that an arrest should be made by him."  G. L.

_____

[8] The same judge resolved the motion to dismiss and served as the trial judge.

c. 268, § 32B (b). These requirements reflect "a compromise of two views: (i) the person arrested has no right to resist the arrest even if illegal, [and] (ii) [the person arrested] has a right to resist (proportionately) an illegal arrest." Urkiel, supra.

a. Motion to dismiss. At a minimum, the facts alleged in the complaint supported a conclusion that Vaughn had a good faith basis to believe that Frederick could be arrested for disorderly conduct.[9] A person engages in disorderly conduct under G. L. c. 272, § 53 (b), if the person "'with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof,' engaged in 'fighting or threatening, or in violent or tumultuous behavior' or created 'a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.'" Commonwealth v. Cooper, 100 Mass. App. Ct. 345, 351 (2021), quoting Commonwealth v. Accime, 476 Mass. 469, 472-473 (2017). "'[T]umultuous behavior,' for the purposes of § 53, includes the refusal to obey a police

_____

[9] Frederick was charged with disorderly conduct, disturbing the peace, and interfering with a police officer. Those charges were dismissed prior to trial as Frederick's "first episode of minor misdemeanor level misconduct" under G. L. c. 119, § 52. Manolo M., 486 Mass. at 694. The officers at the scene had no basis to know this legal limitation for proceeding with those charges, and the juveniles do not argue that the subsequent dismissal of these claims on that basis raises any question of the officers' good faith basis for the arrest.

order."  Commonwealth v. Marcavage, 76 Mass. App. Ct. 34, 38 (2009), cert. denied, 562 U.S. 891 (2010).

The police reports supporting the application stated that there were approximately one hundred students on Florence Street when police arrived.  The street was "entirely blocked" due to the crowd refusing to disperse despite police broadcasting orders to do so over a microphone and using cruisers with activated lights and sirens to attempt to clear the roadway.  As the police arrested Manolo and his friend, the crowd ran closer and surrounded the police.  After those arrests were effectuated, a large crowd remained and refused orders to leave the area.  Frederick ignored several verbal warnings to the leave, continued to entice the crowd to stay and become more agitated, and walked slowly in the middle of the street yelling, "Fuck you pigs I aint [sic] moving shit!"

Frederick argues that the officers had no good faith basis to arrest him, because his words and actions were protected within his rights, under the First Amendment to the United States Constitution, to criticize the police, see O'Brien v. Borowski, 461 Mass. 415, 428-429 (2012), and to observe police officers engaged in their duties in a public place, see Glik v. Cunniffe, 655 F.3d 78, 82 (1st Cir. 2011).  We recognize that "[t]he police do not . . . have unfettered discretion to arrest someone for speech that annoys or offends."  Commonwealth v.

Adams, 482 Mass. 514, 528 (2019). However, "[i]n deciding whether to arrest, police officers often make split-second judgments," and the decision whether conduct -- such as standing in the street, repeatedly failing to comply with police orders to disperse, and encouraging others to stay on a chaotic scene -- is afforded First Amendment protection requires a finely nuanced analysis of the particular facts. Lozman v. Riviera Beach, 138 S. Ct. 1945, 1953 (2018). Though some of Frederick's conduct may have been within the protection of the First Amendment, "that protection did not entitle him to disregard police commands reasonably calculated at ensuring public safety amid potentially dangerous circumstances." Marcavage, 76 Mass. App. Ct. at 40. Here, the alleged conduct was sufficient to give the officers a good faith basis to believe probable cause supported Frederick's arrest.

b. Motions for required finding. The evidence at trial also was sufficient to deny the motions for a required finding of not delinquent. Viewing the evidence in the light most favorable to the Commonwealth, a rational jury could have found the following. The scene confronting the officers upon their arrival was loud and chaotic. Students were running around, swearing, refusing to leave, and physically intervening with officers. Frederick refused to leave the area despite being asked multiple times to do so. Instead, he stood in the street

yelling, "f--- you" and "we're not leaving." When Officer Vaughn attempted to arrest Frederick, he began to pull away, would not put his arms behind his back, and continued to fight as another officer joined to assist Vaughn. He was handcuffed after a third officer, following a verbal warning, put his taser directly on Frederick and stunned him. Viewed in the light most favorable to the Commonwealth, the evidence that Frederick refused to leave the area, encouraged others to stay, and continued to block the street was sufficient to support a conclusion that Vaughn made a judgment in good faith that probable cause supported Frederick's arrest.

To the extent Frederick argues that evidence about the chaotic and volatile nature of the scene -- and in particular the number of people present -- deteriorated after the close of the Commonwealth's case, we disagree. Frederick contends that the video recording submitted in evidence during the juveniles' case-in-chief demonstrates that "the volatility of the situation was overstated by a number of officers" because it depicts only a few people in the area of the arrests. The video recording is not conclusive of the conditions at the scene, because it is limited in both time and perspective. The video recording depicts roughly one minute of the thirty to forty-five minutes that the police were in the area attempting to disperse the

crowd.[10]  The video recording also largely depicts the incidents that occurred on the front lawn of a single house.  It does not show how many people were gathered in the nearby area or on the street, and it does not depict Frederick's arrest.  The jury were free to credit the witnesses' testimony about the number of people in the area at the time of his arrest, and to credit the testimony of the arresting officers describing the totality of the scene and their encounters with the crowd.  Cf. Commonwealth v. Walker, 401 Mass. 338, 343-344 (1987) (jury free to disbelieve defendant's account where nothing compelling in defendant's evidence caused prosecution's case to deteriorate).

3.  Angela.  a.  Motions for required finding.  Angela argues that there was insufficient evidence that the officer who arrested her was acting in good faith when he decided to arrest her or that her conduct amounted to resisting arrest.  We address each element in turn.

i.  Color of official authority.  Angela first argues that the police had no basis to arrest her as she was permitted to record the police's interactions with her friends and inquire why police were harassing people on the street.  However, at trial, evidence was presented that Angela was "in all the officers' faces with her phone."  She was swearing and telling

_____

[10] The recording has some background noise, but none of the conversations between the juveniles and the police can be heard.

the officers that they were violating people's rights.  She had her cell phone approximately five inches from Brockton police Officer Raymond Parrett's face while he was initially interacting with Frederick.  Parrett told Angela to get the cell phone out of his face and slapped the phone out of her hand three times.  Later, she was "[i]nches" away from Brockton police Lieutenant Frank Vardaro as he was struggling to put someone in custody with assistance from another officer.  Angela also was "in [Vardaro's] face with a camera, screaming at [him], swearing at [him], telling [him he's] violating rights.  And she refused to disengage and walk away."  Viewed in the light most favorable to the Commonwealth, a rational jury could conclude that Angela failed to comply with police orders to stand back from the officers while they were performing their duties, including when Vardaro was engaged in a struggle.  This conduct was sufficient to give officers a good faith basis to believe probable cause supported Angela's arrest.  See Marcavage, 76 Mass. App. Ct. at 38 (tumultuous behavior under disorderly conduct statute includes refusal to comply with police order).  See also Adams, 482 Mass. at 527 (offense of interference with police officer requires Commonwealth to prove "the defendant intended his or her conduct, and intended 'the harmful

consequences of the conduct -- that is, the interference with, obstruction, or hindrance'" [citation omitted]).[11]

We are unpersuaded by Angela's arguments to the contrary. To be sure, the ability to film police officers carrying out their official duties in public is protected by the First Amendment, and Angela was free to do so. However, such conduct may be limited by reasonable time, place, and manner restrictions, such as requiring Angela to film from a safe distance away from a chaotic and volatile scene, and in a manner that caused no interference with the officers' performance of their duties. See Glik, 655 F.3d at 84 (reasonable time, place, manner restrictions permissible). See also Adams, 482 Mass. at 528 ("It is constitutionally permissible to prohibit individuals from physically obstructing a police officer"); Marcavage, 76 Mass. App. Ct. at 40 (First Amendment does not permit citizens to disregard police commands meant to ensure public safety in potentially dangerous situations).

---

[11] To the extent Angela argues that the Commonwealth could not prove she "intended the harmful consequences of the conduct," that does not negate the jury's conclusion that Parrett had a good faith basis for the arrest in the moment the decision to arrest was made (quotation and citation omitted). Adams, 482 Mass. at 527. See Commonwealth v. Lender, 66 Mass. App. Ct. 303, 305 (2006) ("Even were a court to determine later that the . . . subsequent arrest lacked . . . probable cause, the absence of [probable cause] does not provide a defense to the charge of resisting arrest").

For largely the same reasons explained in our discussion of Frederick's claims, we conclude that the video recording submitted in evidence does not negate the testimony that Angela was close to the officers' faces and does not cause the Commonwealth's case to deteriorate. Notably, the video recording does not depict the entire encounter; it begins during the last occasion that Parrett knocked Angela's cell phone out of her hand. While the sixty-four second video recording shows Angela in the general vicinity of the officers, but not mere inches away from their faces, both Manolo and his friend appear to be on the ground with officers as the recording ends; thus, the video recording does not even capture the completion of their arrests. The video recording also does not depict what occurred thereafter, including Angela's arrest and Frederick's arrest.[12] Although the footage does not show Angela close to the officers during the partial depiction of the arrests of Manolo and his friend, the jury were free to credit the officers' testimony that at other times (not depicted in the recording) she was within inches of their faces.

---

[12] Testimony was presented that Angela and Frederick recorded Manolo's friend's arrest. Both Angela and Frederick were approximately three feet away from where officers were struggling to place that male in handcuffs when an officer "told them that they needed to back away, . . . to give the officers space to do what they needed to do." Angela and Fredrick complied with that order.

ii. Physical force or violence. Angela next argues that her conduct did not amount to resisting arrest; instead, she asserts that "[s]he merely failed to offer her arm to be handcuffed as quickly as the police officer would have liked." Contrary to her assertion, the evidence at trial established "an active, physical refusal to submit to the authority of the arresting officers, and opposition to their efforts to effect the arrest." Maylott, 65 Mass. App. Ct. at 469. As Parrett tried to put Angela's hands behind her back, "she was pulling away." Parrett explained, "I tried to grab one arm. She yanked away with the camera still going. I tried to put her hands behind her back, she wouldn't." Parrett then grabbed Angela by the backpack and her hair, and put her on the ground. Angela pulled her arms and hands under her body while on the ground such that she could not be handcuffed. After she did not comply with "several orders to pull her hands out" and after a verbal warning, Parrett administered oleoresin capsicum spray (OC spray or pepper spray).[13] In the light most favorable to the Commonwealth, the active conduct of pulling away while the officer was attempting to handcuff Angela coupled with Angela

---

[13] To the extent Angela argues that she already was in custody and under arrest at the time she put her hands under her body, we disagree. See Katykhin, 59 Mass. App. Ct. at 262-263 (arrest complete after defendant fully detained in cruiser, not when defendant was handcuffed).

keeping her hands under her body after being put on the ground fall within the type of "physical force or violence" required to support an adjudication for resisting arrest under G. L. c. 268, § 32B (a) (1).  See Maylott, supra at 467-469 (defendant resisted arrest by stiffening arm, refusing to put hands behind back, and not turning around to be handcuffed); Katykhin, 59 Mass. App. Ct. at 262 (defendant resisted arrest by refusing to get into police cruiser, standing rigid, and "pull[ing] away, starting a 'tug of war'").  Accordingly, the evidence was sufficient to support Angela's adjudication for resisting arrest.

b.  Jury instructions.  Angela also claims error in the jury instructions on the offense of resisting arrest. Specifically, she contends that when the judge explained that a person is not permitted to resist even an unlawful arrest, the judge omitted qualifying language that the arrest must be carried out in good faith.  Because Angela did not object to the instruction, we review to determine if there was any error and, if there was, whether it created a substantial risk of a miscarriage of justice.  See Souza, 492 Mass. at 635.

We discern no error.  The judge first gave an instruction on the offense of ABPO and then gave an instruction on the offense of resisting arrest.  A reading of the transcript demonstrates that the language Angela now challenges -- "A

person who is arrested by someone who he knows is a police officer, is not allowed to resist that arrest with force, whether the arrest is lawful or not" -- was clearly part of the instruction on ABPO, and Angela was not charged with that offense. The transition from the instruction on ABPO to resisting arrest was apparent -- the judge prefaced the transition with a statement that each juvenile was charged with resisting arrest and then explained what the Commonwealth must prove beyond a reasonable doubt with respect to that offense.[14] As part of the instruction on resisting arrest, the judge correctly explained, "[T]he Commonwealth must prove that the police officer was acting, quote, under color of official authority. A police officer acts under color of official authority when in the regular course of assigned duties he or she makes a judgement in good faith based on the surrounding facts and circumstances that he or she should make an arrest." At the conclusion of the instruction on resisting arrest, the judge explained, "It is not a defense to this charge that a police officer was attempting to make an arrest which was unlawful if the officer was acting under color of his official authority and used only reasonable force in attempting to make

---

[14] The judge's instruction on the offense of resisting arrest tracks the language in the Instruction 7.460 of the Criminal Model Jury Instructions for Use in the District Court (2009).

that arrest" (emphasis added).  Viewing the instructions in their entirety, the judge adequately explained the burden of proof on the offense of resisting arrest.  See Commonwealth v. DelValle, 443 Mass. 782, 796 (2005) ("We review a judge's charge to the jury for error by reading the charge as a whole, and not by scrutinizing each sentence out of context").

Conclusion.  On the counts of the complaints charging Manolo, Frederick, and Angela with resisting arrest, the juveniles' adjudications of delinquency are affirmed.  On the count of the complaint charging Manolo with assault and battery on a police officer, the adjudication of delinquency is vacated and the verdict set aside.

So ordered.