COMMONWEALTH vs. ALFONZO GRANT.

No. 06-P-1917.

Hampden. December 11, 2007. - February 13, 2008.

Present: COWIN, BROWN, & KAFKER, JJ.

*Resisting Arrest. Firearms. Practice, Criminal,* Warrant. *Evidence,* Prior misconduct.

The evidence at a criminal trial was insufficient to convict the defendant of resisting arrest in violation of G. L. c. 268, § 32B, where there was no evidence to prove that the defendant, in initially running from police officers who pursued him without communicating with him in any way, understood that the officers were effecting an arrest, and where the defendant discontinued his flight and offered no physical resistance once the police cornered him and told him to get on the ground. [207-210]

At the trial of indictments charging the defendant with, inter alia, unlawful possession of firearms and unlawful possession of ammunition, the judge properly admitted in evidence testimony regarding an outstanding warrant for the arrest of the defendant, where that warrant was relevant to establishing the officers' intent to effect an arrest of the defendant, and where the judge carefully restricted the extent of that evidence and instructed the jury on the limits of its permissible use [210-211]; further, there was overwhelming evidence to support the convictions [211].

INDICTMENTS found and returned in the Superior Court Department on June 7, 2005.

The cases were tried before *Raymond J. Brassard,* J.

*Michael J. Fellows* for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

KAFKER, J. Immediately after a police cruiser began to follow the defendant, Alfonzo Grant, but before the police had communicated with him in any way, the defendant jumped from his car and ran through several back yards, jumping over fences. Several police officers pursued him at full sprint and observed him place a gun in a back yard grill. Two officers eventually

trapped the defendant and arrested him without further incident. The defendant was convicted of resisting arrest in violation of G. L. c. 268, § 32B, and unlawful possession of a firearm and ammunition in violation of G. L. c. 269, § 10(*a*) and 10(*h*), and G. L. c. 269, § 10(G)(*e*), respectively. He appeals his resisting arrest conviction on the ground that there was insufficient evidence as a matter of law. He appeals his firearm and ammunition convictions on the ground that the admission of testimony regarding an arrest warrant to prove the resisting arrest conviction was, despite limiting instructions, highly prejudicial prior bad act evidence that led improperly to his firearm and ammunition convictions. For the reasons stated below, we reverse the resisting arrest conviction and affirm the firearm and ammunition convictions.

1. *Background.* The jury could have found the following facts. At 3:30 P.M. on April 15, 2005, Officers Turowsky and Tardiff of the Springfield police department observed the defendant driving on Kensington Avenue in Springfield. Officer Tardiff, who knew that there was a warrant out for the defendant's arrest, followed the defendant in a marked car and sent out a radio dispatch to the effect that they were about to pull over a car.

Before the officers turned on their siren or lights, and before they spoke with the defendant, the defendant abruptly pulled his car to the side of the road, jumped out of the car, and ran past the passenger side of the police cruiser and into a driveway. Without yelling for the defendant to stop or telling him that he was under arrest, the officers gave chase. Officer Tardiff chased him on foot through the backyards of several houses in the area while other officers pursued him on foot and in the cruiser. While fleeing the police, the defendant jumped over an eight-foot wooden stockade fence. Officer Tardiff, in a full sprint, jumped over the fence as well.

Running through backyards, the defendant jumped a second stockade fence, which was also approximately eight feet in height, and landed in the backyard of a house. Officer Tardiff jumped onto the fence, but did not climb over it. Instead, he pulled himself up by his arms so that his head was higher than the top of the fence. From this position, Officer Tardiff observed the defendant as he stopped running and approached a grill in

the backyard. The defendant lifted the doors of the grill, placed a gun inside, shut the grill, and continued to run. Officer Tardiff, who was familiar with the area, went over a different fence in an attempt to cut the defendant off in his path of travel. When Officer Tardiff was unsuccessful, he radioed the other officers and returned to the backyard to collect the gun.

During Officer Tardiff's pursuit, Officer Turowsky had taken the keys from the ignition of the defendant's car. He then returned to the police cruiser and pursued the defendant by car with the assistance of Officer Tardiff's radio dispatches. Officer Turowsky sighted the defendant soon after Officer Tardiff lost sight of him. Officer Turowsky parked the cruiser and began to pursue the defendant by foot. The defendant ran down a narrow driveway which contained a parked boat next to a stockade fence approximately six feet high. The defendant boosted himself onto the parked boat and jumped over the fence. Officer Turowsky radioed his position to the other officers and ran in another direction in an attempt to cut the defendant off, jumping a small fence in the process.

Officer Morrow, who had also been in pursuit, sighted the defendant, drew his gun, and yelled for the defendant to "get on the ground." Instead, the defendant turned and ran a short distance from Officer Morrow, almost colliding with Officer Turowsky, who had come around a corner. Officer Turowsky and Officer Morrow, with both of their guns drawn, then ordered the defendant to the ground. The defendant then submitted.

On June 7, 2005, the defendant was indicted by a Hampden County grand jury for unlawful possession of a firearm, unlawful possession of ammunition, and resisting arrest. The defendant did not challenge the sufficiency of evidence presented to the grand jury. On June 9, 2006, after a two-day jury trial, the defendant was convicted on all counts.

2. *Resisting arrest conviction.* The defendant claims on appeal that there was insufficient evidence to support his conviction of resisting arrest. He argues that flight from the police prior to any effort on their part to attempt to arrest the defendant cannot constitute resisting arrest. "The question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia,* 443 U.S. 319 (1979).

A defendant resists arrest if "he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another." G. L. c. 268, § 32B(*a*), inserted by St. 1995, c. 276.[1]

As further explained by the Supreme Judicial Court, "the crime [of resisting arrest] is committed, if at all, at the time of the 'effecting' of an arrest." *Commonwealth* v. *Grandison,* 433 Mass. 135, 145 (2001). An arrest is effected when there is (1) "an actual or constructive seizure or detention of the person, [2] performed with the intent to effect an arrest and [3] so understood by the person detained." *Ibid.,* quoting from *Commonwealth* v. *Cook,* 419 Mass. 192, 198 (1994). The standard for determining whether a defendant understood that he was being arrested is objective — whether a reasonable person in the defendant's circumstances would have so understood. See *Commonwealth* v. *Cook, supra* at 199; *Commonwealth* v. *Obershaw,* 435 Mass. 794, 802 n.2 (2002).

The timing of the events here is critical to the analysis. When the defendant first fled, he had not been actually or constructively seized or detained. The police had not told him to stop, nor informed him that he was under arrest. They had not even closely approached him. There was no evidence that he was aware of the arrest warrant at the time he bolted from his car. Although it was clear that he ran to avoid and evade the police, avoiding and evading the police was not the equivalent of resisting arrest, particularly when the police had not spoken to the defendant before he ran away.

---

[1]There was no physical force or violence used against the police in the instant case. Therefore, the defendant was prosecuted for using "any other means which creates a substantial risk of causing bodily injury." G. L. c. 268, § 32B(*a*)(2). The means here was his flight. The defendant contends that flight is insufficient to constitute resistance by "any other means which creates a substantial risk of causing bodily injury." See note 2, *infra.*

We recognize that the pursuit here continued intensely, raising the question of when in the course of the pursuit it may have been deemed the "functional equivalent of a seizure," the first element of arrest. *Commonwealth* v. *Stoute*, 422 Mass. 782, 789 (1996). See *Commonwealth* v. *Sykes*, 449 Mass. 308, 314 (2007). The second element was clearly satisfied by Officer Tardiff's testimony that he knew there was an outstanding warrant for the defendant's arrest and that he pursued the defendant with the intent to arrest him.

The Commonwealth must also prove, however, that a reasonable person in the defendant's position would have understood that the seizure was to effect an arrest. On this element of the offense, proof is lacking. Other than chasing the defendant, the officers did not communicate with him in any way until right before he submitted. While it is not necessary to use the word "arrest" when taking a defendant into custody, *Commonwealth* v. *Wallace*, 346 Mass. 9, 16 (1963), "in most instances there is some form of communication between the police officer and the person." Smith, Criminal Practice and Procedure § 3.13 (3d ed. 2007). Contrast *Commonwealth* v. *Sanderson*, 398 Mass. 761, 764-766 (1986) (defendant deemed "arrested" without meeting formal requirements of arrest because arrest could be inferred from fact that defendant was forced to stand outside his car, which was surrounded by several police cars, for extended period of time). During the defendant's flight from the police, there was no evidence to prove that he understood that the officers were effecting an arrest. He was simply running away from them.

Fleeing from, or even resisting, a stop or patfrisk does not constitute the crime of resisting arrest. See *Commonwealth* v. *Smith*, 55 Mass. App. Ct. 569, 575-576 (2002) (reversal of resisting arrest conviction of defendant who forcefully resisted a police officer who was attempting to stop, but not arrest, defendant); *Commonwealth* v. *Pagan*, 63 Mass. App. Ct. 780, 784 (2005) (resisting arrest statute applies to arrests, not patfrisks); *Commonwealth* v. *Lender*, 66 Mass. App. Ct. 303, 305-306 (2006) (same). Although the officers here were intending to effect an arrest, and not just a stop or patfrisk, neither their words nor their actions had objectively communicated that intention to the defendant prior to, or during, the pursuit. We believe such

communication is required to satisfy the requirement that a defendant understand he is being arrested.

Once the police had cornered the defendant and told him to "get on the ground," he quickly submitted. He discontinued his flight and offered no physical resistance. Thus, once all three elements of an arrest were present — seizure of the defendant, an intent to effect an arrest, and an understanding by a reasonable defendant that he was under arrest — there was no resistance. Consequently, we find the evidence insufficient to support a conviction of resisting arrest.[2]

3. *Admissibility of the warrant in the firearms charges.* The defendant also argues that his convictions of the firearms and ammunition offenses must be reversed due to the admission in evidence of testimony regarding the arrest warrant. The defendant contends that because he did not commit the crime of resisting arrest, it was improper for the judge to allow the Commonwealth, over objection, to introduce highly prejudicial prior bad act evidence in the form of the warrant. We conclude that the trial judge handled this difficult matter properly.

In proving the crime of resisting arrest, the Commonwealth was required to establish that the officers were trying to effect an arrest of the defendant. The arrest warrant was therefore highly

---

[2]Because we have concluded that there was no arrest at the time of the chase, we need not address whether the defendant's bounding flight over fences here, without other physical resistance, amounts to resisting arrest pursuant to G. L. c. 268, § 32B(a)(2): "[u]sing any other means which creates a substantial risk of causing bodily injury to such police officer or another." There is uncertainty in the case law and commentary regarding the circumstances in which flight on foot may constitute resisting arrest. *Howard* v. *State*, 101 P.3d 1054, 1059 (Alaska Ct. App. 2004) (running and hiding in woods does not constitute resisting arrest). *Commonwealth* v. *Miller*, 327 Pa. Super. 154, 156 (1984) (conviction for resisting arrest based upon defendant's flight is only proper "where the circumstances of the flight expose the pursuing officers to substantial danger"). *Commonwealth* v. *Lyons*, 382 Pa. Super. 438, 448-449 (1989) (while flight alone is insufficient to resist arrest, running into frigid waist-deep creek with swift current and struggling with officers in water created substantial risk of bodily injury to pursuing officers). Model Penal Code § 242.2 & comment 2 (1980) (promoting "policy decision not to criminalize flight" unless it "threatens breach of the peace" or "exposes the pursuing officers to substantial danger" as "the better response to such conduct is to authorize police to pursue fleeing persons and use force if necessary to effect arrest"). Model Penal Code § 208.31, at 129-130 (Tentative Draft No. 8).

relevant to that element of proof. See *Commonwealth* v. *Valentin*, 420 Mass. 263, 270 (1995); *Commonwealth* v. *Marrero*, 427 Mass. 65, 67-68 (1998). In terms of weighing the potential prejudicial effect of this highly probative evidence, the judge was particularly sensitive to the effect such information could have on the more serious firearms and ammunition charges and strictly limited the testimony the Commonwealth was allowed to submit. The testimony was essentially that there was a warrant out for the defendant's arrest and that the officer was pursuing the defendant with the intent to arrest him. No details of the outstanding warrant were admitted. The judge also provided a limiting instruction that the arrest warrant was "not admitted to imply that Mr. Grant committed any wrongful acts, that he had any reputation for committing wrongful acts, or anything of the sort." The judge repeated this limiting instruction during his charge to the jury. We therefore discern no error in the judge's careful and limited admission of the arrest warrant evidence. The fact that the resisting arrest charge is ultimately reversed on appeal because of the Commonwealth's failure to prove other elements of the offense does not change that analysis.

Finally, there was overwhelming evidence to support the firearms and ammunition convictions: Officer Tardiff testified to watching the defendant place a gun in the grill, and the gun and ammunition that were entered in evidence were the same as those recovered from the grill. See *Commonwealth* v. *Waite*, 422 Mass. 792, 801-802 (1996).[3]

4. *Conclusion.* The judgments of conviction of unlawful possession of a firearm and unlawful possession of ammunition are affirmed. The judgment of conviction of resisting arrest is reversed, and on that charge, the verdict is set aside, and judgment shall enter for the defendant.

*So ordered.*

---

[3]The officer testified that the gun contained three rounds of ammunition. The gun entered in evidence contained two rounds, and the officer explained that one round was test fired to determine whether the gun was operable.