## Commonwealth vs. Luzander Montoya.

No. 06-P-1692.

Hampden. November 5, 2007. - November 13, 2008.

Present: Perretta, Gelinas, & Kantrowitz, JJ.[1]

Further appellate review granted, 454 Mass. 1107 (2009).

*Resisting Arrest. Arrest. Evidence,* Flight. *Practice, Criminal,* Required finding.

A criminal defendant was under arrest when police officers, who had seen the defendant extend his arm, in which he held a gun aimed at an apartment complex, and who had heard three gun shots, pursued the defendant in their marked vehicle with its lights activated, and, with their weapons drawn, confronted the defendant near a set of stairs and ordered him to raise his arms and step away from the stairs. [127-128]

This court concluded that G. L. c. 268, § 32B(*a*), which prohibits persons from resisting arrest, comprehends a defendant's flight where the circumstances of such flight expose pursuers to a substantial risk of bodily injury. [128-131]

At the trial of an indictment charging the defendant with, inter alia, resisting arrest in violation of G. L. c. 268, § 32B(*a*), a Superior Court judge properly denied the criminal defendant's motion for a required finding of not guilty, where the circumstances presented more than sufficient evidence to put to the jury the question whether in attempting to prevent police officers from effecting his arrest, the defendant used means that created a substantial risk of causing the officers bodily injury. [131-132]

Indictment found and returned in the Superior Court Department on October 26, 2005.

The case was tried before *Tina S. Page,* J.

*William R. Hill, Jr.,* Committee for Public Counsel Services, for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

Perretta, J. At the conclusion of a jury trial, the defendant was found guilty of resisting arrest in violation of G. L. c. 268,

[1]Justice Gelinas participated in the deliberation on this case prior to his retirement.

§ 32B(*a*), inserted by St. 1995, c. 276 (hereinafter § 32B[*a*]). He argues on appeal that because the evidence was insufficient to show that his actions constituted resisting arrest within the comprehension of the statute, the judge erred in denying his motion for a required finding of not guilty. See Mass.R.Crim.P. 25, as amended, 420 Mass. 1502 (1995). We affirm the judgment.[2]

1. *The facts.* We relate the pertinent facts in the light most favorable to the Commonwealth, as required by *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). At about 10:00 P.M. on September 11, 2005, Holyoke police Officers Joseph Wilson and William Delgado were on patrol and driving along Oliver Street in Holyoke in a marked police cruiser when Delgado, who was in the passenger seat, observed an individual identified at trial as the defendant. The defendant was riding a bicycle, about fifty feet from the cruiser and in its path, when he extended his arm and fired three gunshots in the direction of a nearby apartment complex. Intending to arrest the defendant, the officers activated the lights on the cruiser and shouted at the defendant to stop. The defendant fled on his bicycle, leading the pursuing officers along several neighboring streets and, eventually, to Open Square Road where he stopped at the right of a set of stairs. Wilson pulled the cruiser over to the left of the stairs. He and Delgado got out of the cruiser with their guns drawn and ordered the defendant to raise his arms and step away from the stairs.

The defendant began running away, and a foot chase ensued. With Wilson and Delgado in pursuit, the defendant ran across a parking lot and down a ramp alongside buildings, climbed over a chain link fence at a point where it was bent, and dropped twenty to twenty-five feet into the canal below. The canal was about sixty feet wide, three to four feet deep,[3] and dirty with a thick layer of mud or silt on the bottom. The area around the canal was poorly lit.

At the time of the defendant's jump into the canal, Wilson and Delgado were about thirty feet from the fence. When the officers arrived at the fence moments later, they saw the defendant float-

---

[2]The defendant was acquitted on charges of assault and battery by means of a dangerous weapon, illegal possession of a firearm, illegal possession of ammunition, and discharging a firearm within 500 feet of a dwelling.

[3]There was also testimony to the effect that the canal was five to six feet deep.

ing in the water below, his shirt and sweatshirt floating beside him. Neither officer scaled the fence to jump into the canal. Instead, Delgado shouted to the defendant, telling him that he was under arrest, that he was not to reach into his pants, and that he was to keep his hands where they could be seen. The defendant made no further attempt at flight and was ultimately retrieved from the canal when a ladder was lowered to him. Upon his emergence, the defendant was taken into custody without further incident.

2. *Discussion.* It is the defendant's contention that he cannot be found guilty of resisting arrest because the evidence failed to show either that he was under arrest when he jumped into the canal or that his attempt to evade the police by fleeing was anything more than "purely passive conduct," which is not within the comprehension of § 32B(*a*).

a. *The arrest.* Because "[t]he crime [of resisting arrest] is committed, if at all, at the time of the 'effecting' of an arrest," *Commonwealth* v. *Grant*, 71 Mass. App. Ct. 205, 208 (2008), quoting from *Commonwealth* v. *Grandison*, 433 Mass. 135, 145 (2001), we review the evidence to determine first the point at which the defendant was arrested. The defendant claims that the evidence shows that he was not placed under "arrest" until Delgado shouted that fact to him as he floated in the canal.

Precedent establishes that an arrest occurs when there is "(1) 'an actual or constructive seizure or detention of the person, [2] performed with the intention to effect an arrest and [3] so understood by the person detained.' " *Commonwealth* v. *Cook*, 419 Mass. 192, 198 (1994), quoting from *Massachusetts Gen. Hosp.* v. *Revere*, 385 Mass. 772, 778 (1982), rev'd on other grounds, 463 U.S. 239 (1983). As stated in *United States* v. *Mendenhall*, 446 U.S. 544, 554 (1980), "a person has been 'seized' . . . if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." See *Commonwealth* v. *Borges*, 395 Mass. 788, 791 (1985), quoting from *United States* v. *Mendenhall*, *supra*. See also *Commonwealth* v. *Sykes*, 449 Mass. 308, 310-311 (2007). Whether a defendant understood that he was being arrested is determined with reference to an objective standard, "what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes." *Massachusetts*

*Gen. Hosp.* v. *Revere*, 385 Mass. at 778, quoting from *Hicks* v. *United States*, 382 F.2d 158, 161 (D.C. Cir. 1967). See *Commonwealth* v. *Sanderson*, 398 Mass. 761, 767 (1986); *Commonwealth* v. *Grant*, 71 Mass. App. Ct. at 208. It is also established that an arrest may occur prior to the time police make a formal arrest, and that verbal notification to an individual that he is being arrested is not conclusive on the question when an arrest occurs. See *Commonwealth* v. *Wallace*, 346 Mass. 9, 16 (1963); *Commonwealth* v. *Sanderson*, 398 Mass. at 766; *Commonwealth* v. *Brillante*, 399 Mass. 152, 154-155 n.5 (1987).

Applying these established principles to the evidence before us, we conclude that the defendant's "arrest" occurred no later than the time that Wilson and Delgado, with their weapons drawn, confronted the defendant at the stairs at Open Square Road and ordered him to raise his arms and step away from the stairs.[4] Immediately prior to that time, the officers had seen the defendant extend his arm, in which he held a gun aimed at an apartment complex, and heard three gun shots. We think it obvious from the defendant's proximity to the officers that even were we to assume that he had not fired the shots, he heard them. Upon hearing the gunshots, the officers immediately activated the lights on their marked vehicle and shouted to the defendant to stop. He did not. The lights of their cruiser ablaze, the officers pursued the defendant along several neighboring streets to the stairs at Open Square Road. There they ordered him to raise his arms and step away from the stairs. In our view, it is at this time that the defendant knew and understood, or should have known and understood, that he was being arrested. See *Commonwealth* v. *Grant*, 71 Mass. App. Ct. at 210. Rather than do as the police ordered, the defendant fled.

b. *The resistance.* As noted at the outset, the defendant's conviction is based upon § 32B(*a*), which provides, in pertinent part, that an individual commits the offense of resisting arrest if he

"knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting

---

[4]The defendant may well have been "seized" earlier. See *Commonwealth* v. *Smigliano*, 427 Mass. 490, 491-492 (1998) (activation of blue lights on police car constituted seizure); *Commonwealth* v. *Perry*, 62 Mass. App. Ct. 500, 503 (2004) (defendant seized when ordered to stop).

an arrest of the actor or another, by: (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another."

As can be seen from the language of the statute, clauses (1) and (2) of § 32B(*a*) define two separate and distinct classes of conduct that can rise to the level of criminal conduct. See *Commonwealth* v. *Maylott*, 65 Mass. App. Ct. 466, 468-470 (2006), wherein the court analyzed the two prongs of § 32B(*a*) separately. See also *Commonwealth* v. *Katykhin*, 59 Mass. App. Ct. 261, 263 (2003) (no requirement under § 32B[*a*][1] that Commonwealth show substantial risk of causing bodily injury to officer or another).

Because we agree with the defendant's contention that there was insufficient evidence to show the "[use or threatened use of] physical force or violence against the police officer[s]," we take up the question left open in *Commonwealth* v. *Grant*, 71 Mass. App. Ct. at 210 n.2, that is, whether the circumstance of flight, without other physical resistance, can constitute a violation of § 32B(*a*)(2). In so doing, we look first to the language of the statute while bearing in mind the basic rules of statutory interpretation and construction. See *Commonwealth* v. *Millican*, 449 Mass. 298, 300-301 (2007).

Although § 32B(*a*)(2) speaks in terms of "means," the statute is silent as to a definition of that word. Consequently, we give the word "means" its usual and accepted meaning as found in dictionaries, if the meaning is consistent with the purpose of the statute. See *Commonwealth* v. *Bell*, 442 Mass. 118, 124 (2004). As defined in the American Heritage Dictionary 775 (2d College ed. 1982), "means" is a "method, course of action, or instrument by which an act can be accomplished or some end achieved." Webster's Third New Intl. Dictionary 1398 (2002) defines "means" as "something by the use or help of which a desired end is attained or made more likely," and further explains that "means" is a "very general term applicable to anything employed in performing or executing some end." Section 32B(*a*)(2) also speaks to a "substantial risk of causing bodily injury." "The common dictionary definition of 'substantial' is

'considerable in amount, value, or worth.' " *Commonwealth* v. *Robinson*, 444 Mass. 102, 106, 108 (2005), quoting from Webster's Third New Intl. Dictionary 2280 (1993).

Although we do not read § 32B(*a*)(2) as comprehending mere flight on foot from arrest, we do conclude that that provision comprehends a defendant's flight where the *circumstances* of such flight expose his pursuers to a "substantial risk of bodily injury." Our conclusion is consistent with the approach taken in Model Penal Code and Commentaries § 242.2 (1980), which reads:

> "A person commits a misdemeanor if, for the purpose of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance."

While the comments to § 242.2 provide that the Model Penal Code's definition of this offense excludes a mere act of flight, comment two to § 242.2 provides that the offense set out in § 242.2 "reaches certain situations in which the *circumstances* of flight from arrest expose the pursuing officers to substantial danger" (emphasis added). Although our research shows that numerous sister States have statutes similar either to § 242.2 or § 32B(*a*),[5] two have spoken to the question presently before us on somewhat similar or analogous facts, that is, what situations are deemed sufficient to constitute *circumstances* exposing of-

---

[5]States such as Arizona, Colorado, Hawaii, Maine, Montana, and South Dakota have enacted statutes similar in all material respects to § 32B(*a*). See Ariz. Rev. Stat. Ann. § 13-2508 (West 2001); Colo. Rev. Stat. § 18-8-103 (2004); Haw. Rev. Stat. § 710-1026 (2008); Me. Rev. Stat. Ann. tit. 17-A, § 751-A (West 2006); Mont. Code Ann. § 45-7-301 (2007); S.D. Codified Laws Ann. § 22-11-4 (2006). North Dakota and Pennsylvania define the offense in the mode of the Model Penal Code. See N.D. Cent. Code § 12.1-08-02 (1997); Pa. Stat. Ann. tit. 18, § 5104 (West 1983). Other States, such as Alaska and Oregon, define the offense to include or designate as an aggravating circumstance attempts to prevent an arrest by use of means that create a substantial risk of bodily injury to police officers or others. See Alaska Stat. § 11.56.700 (2006); Or. Rev. Stat. § 162.315 (2003). New Jersey expressly includes flight from arrest within its criminal laws and designates the use of means creating a substantial risk of injury to be an offense of a higher degree. See N.J. Rev. Stat. § 2C:29-2 (2005).

ficers or others to a substantial risk of bodily harm. In *Commonwealth* v. *Lyons*, 382 Pa. Super. 438, 448-449 (1989), the court found that a substantial risk of bodily injury was shown where the evidence was sufficient to establish that the defendant ran into a frigid, waist-deep creek with a slippery streambed. After the police officers caught up to him, he went limp and refused to walk, requiring the police officers to carry him to shore. Cf. *Eide* v. *State*, 168 P.3d 499, 502 (Alaska Ct. App. 2007) (flight in an automobile at a high rate of speed through a residential district an example of conduct that creates a substantial risk of physical injury).

c. *The risk of injury to the officers.* Based upon the conclusions that we have reached in parts 2.a and 2.b, *supra*, we next take up the question whether the Commonwealth's evidence was sufficient to allow the jury to find beyond a reasonable doubt that the defendant's conduct violated § 32B($a$)(2), that is, whether the Commonwealth's evidence was sufficient to sustain its burden of showing that the defendant's conduct in resisting his capture was sufficient to show that his conduct "create[d] a substantial risk of causing bodily injury" to Wilson or Delgado.

Contrary to the defendant's assertion, there is nothing in *Commonwealth* v. *Katykhin*, 59 Mass. App. Ct. 261, that precludes our consideration of whether the evidence was sufficient to put to the jury the question whether his conduct was in violation of § 32B($a$)(2). He argues that he cannot be found guilty of resisting arrest because his attempt to evade arrest by fleeing was no more than "purely passive conduct." His argument is unavailing.

In the first instance, *Commonwealth* v. *Katykhin, supra,* was concerned with § 32B($a$)(1) and is not controlling on the question whether the defendant's conduct violated § 32B($a$)(2).[6] We held that § 32B($a$)(1) did not require the Commonwealth to show a substantial risk of injury to the officers or other persons. *Id.* at 263. Moreover, we expressly noted that our decision "[*did*] *not address* . . . purely passive conduct . . . such

---

[6]In *Commonwealth* v. *Katykhin*, 59 Mass. App. Ct. at 263-264, we held that a defendant's physical resistance to being placed in a police cruiser by, among other acts, pulling his body away from the officer and the cruiser so as to engage in a "tug of war" constituted the offense of resisting arrest under § 32B($a$)(1).

as that characteristic of nonviolent protestors" (emphasis added). *Id.* at 263 n.2. A careful if not casual reading of *Katykhin* establishes that the defendant's conduct can hardly be seen as within the comprehension of its holding.

Based upon application of the previously cited and discussed authorities, we next consider whether the evidence taken in the light most favorable to the Commonwealth, see part 1, *supra*, was sufficient to withstand the defendant's motion for a required finding of not guilty of violating § 32B(*a*)(2).

As earlier related, the first phase of the defendant's flight led to a staircase at Open Square Road. The officers got out of the cruiser with their weapons drawn, and ordered the defendant to raise his arms and step away from the stairs. It is no later than at this point that the defendant knew or should have known that he was under arrest. See part 2.a, *supra.*

To prevent his arrest from there taking effect, the defendant chose to continue his flight. With the officers in pursuit, he fled by foot across a parking lot and down a ramp running alongside buildings, climbed over a chain link fence, and jumped twenty-five feet into the shallow canal. At that point the officers were about thirty feet from the fence. It was late at night, and the area was poorly lit. The fence stood at the very edge of the canal and had no appreciable "ledge" on its other side that would permit a person to land or stand. Neither officer followed the defendant into the canal. Rather, they shouted below to him that he was not to reach into his pants and that he was to keep his hands where they could be seen. The defendant was finally taken into custody when a ladder was lowered to extricate him from the canal.

These circumstances present more than sufficient evidence to put to the jury the question whether the defendant violated § 32B(*a*)(2), that is, whether in attempting to prevent Wilson and Delgado from effecting his arrest, he used "means which create[d] a substantial risk of causing [them] bodily injury." The fact that the officers chose not to scale the fence and jump twenty feet into shallow water is not determinative of the question. See *Commonwealth* v. *Grandison*, 433 Mass. at 145, where the court emphasized that the statute focuses on risk and concluded that its elements were satisfied by conduct which *could* have caused an officer to be injured. See also *Commonwealth* v. *Lyons*, 382 Pa. Super. at 448-449.

3. *Conclusion.* It follows from all that we have said that the judge did not err in denying the defendant's motion for a required finding of not guilty on the charge of violating G. L. c. 268, § 32B(*a*)(2).

*Judgment affirmed.*