COMMONWEALTH *vs.* ERIC J. KNIGHT.

No. 08-P-983.

Suffolk. October 15, 2009. - November 18, 2009.

Present: McHUGH, VUONO, & MEADE, JJ.

*Practice, Criminal,* Instructions to jury. *Arrest. Resisting Arrest. Constitutional Law,* Search and seizure. *Search and Seizure,* Arrest.

At the trial of a criminal complaint charging the defendant with resisting arrest in violation of G. L. c. 268, § 32B, the judge did not err in declining to give the defendant's requested jury instruction that the defendant's post-arrest conduct could not be considered by the jury in support of the charge against him, where the evidence — which demonstrated a continuous course of resistance by the defendant before the arrest was complete, with only a brief pause that was insufficient to constitute the submission necessary for the arrest to be fully effected — was insufficient to justify such an instruction. [737-740]

COMPLAINT received and sworn to in the Dorchester Division of the Boston Municipal Court Department on July 21, 2006.

The case was tried before *E. Sydney Hanlon,* J.

*Christie M. Charles* for the defendant.

*Elisabeth Kosterlitz,* Assistant District Attorney, for the Commonwealth.

MEADE, J. After a jury trial, the defendant was convicted of resisting arrest in violation of G. L. c. 268, § 32B.[1] On appeal, the defendant claims the judge erred in not giving the defendant's requested jury instruction that a resisting arrest conviction cannot rest on postarrest conduct. We affirm.

1. *Background.* During the early evening hours of July 20, 2006, State police Trooper Ron Solimini was on routine patrol in Boston when he stopped a yellow Honda automobile because

---

[1]The jury found the defendant not guilty of refusing to give his name and address to a police officer at night, disorderly conduct, threatening to commit a crime, and assault and battery by means of a dangerous weapon.

it had excessive window tint.[2] When Solimini first approached the car, he thought he saw someone throw something out of a rear, passenger side window. The car had five occupants, four women and one man, the defendant, who was seated in the back seat behind the driver. When he used his flashlight to look in the back seat, Solimini saw the female in the middle of the back seat reaching forward and grabbing for something, which she said was a cellular telephone. He also noticed that both the defendant and the woman seated next to the other rear door were slouched against their doors as though they were concealing something.

Based on what he had seen, Solimini asked everyone inside the car for their names and dates of birth. With the exception of the defendant, all cooperated. The defendant looked away from Solimini, and ignored the request for his name. When Solimini again asked for the defendant's name, the defendant replied, "[T]his is fucking bullshit, this is because we're black, I don't have to give you anything." In response to Solimini's third request for his name and identification, the defendant replied, "I don't have to give you anything." Based on the defendant's demeanor and furtive behavior, as well as that of the other passengers, Solimini perceived the defendant as a threat and asked him to leave the vehicle so he could pat frisk him for a weapon.

The defendant reluctantly got out of the car. Once he was outside, the defendant became very aggressive and called Solimini "racist motherfucker" and "white boy." He said, "[W]hat are you going to do, you're not going to search me," took "almost a fighting stance," "bladed himself away from" Solimini, crossed his arms, and said, "[Y]ou're not going to search me, what are you going to do about it[?]" Solimini asked the defendant to turn around and place his hands behind his back so Solimini could pat frisk him for weapons. The defendant refused. Solimini handcuffed the defendant to protect both of them. The defendant called Solimini "a fucking dickhead," screamed for help, and yelled, "[D]iscrimination, discrimination"; he was "out of control." At this point, Solimini placed the defendant under arrest for disorderly conduct.

---

[2]Aided by a tint meter, Solimini determined that the car's windows had a transparency level of six percent, whereas thirty-five percent is the lowest acceptable level.

Solimini called for backup and waited for other troopers to arrive. He could not pat frisk the defendant until other troopers arrived because the defendant was spinning away from him and he could not get a grasp on the defendant even though he was handcuffed. Traffic was backing up because of the defendant's behavior. Once the other troopers arrived, Solimini was able to pat frisk the defendant. He did not find any weapons. While Troopers Shervan, Franzella, and Cameron were attempting to place the defendant in Solimini's cruiser, he continued to be belligerent, and screamed and yelled at the troopers. He called them "racist motherfuckers" and refused to get inside. As Trooper Shervan was guiding the defendant into the cruiser, the defendant gave a backward "donkey kick" to Shervan's leg. Trooper Cameron "grabbed the backseat of [the defendant's] pants" and slid him into the cruiser. Inside the cruiser, the defendant continued to be belligerent and spouted obscenities. The driver of the Honda automobile was written a citation and all four women were permitted to leave.

In his defense, the defendant testified to a different version of the events. In his version, he was compliant and cooperative with Trooper Solimini during the entire roadside stop. Outside the car, the defendant "assumed the position," was pat frisked, and then was handcuffed for safety. After Solimini requested backup, they waited in silence for a few minutes until the other troopers arrived. A second search of the defendant revealed nothing, and the defendant was put in the cruiser. Because the defendant was over six feet tall, he requested help to get in the cruiser; the troopers told him "to shut up and get in the car." When the defendant was unable to get in on his own, a trooper forced him inside. The defendant denied ever resisting arrest, kicking any of the troopers, or yelling.

2. *Discussion.* The defendant claims that he was arrested when he was ordered out of the car and told to "assume the position," and that all of his subsequent conduct could not be considered by the jury in support of the resisting arrest charge. Because the judge erroneously refused his requested instruction, he claims, the jury were not prevented from considering postarrest conduct. We disagree.[3]

---

[3]The Commonwealth argues that the claimed error was not properly preserved

In determining whether the evidence required an instruction concerning action taken during the incident in question, here postarrest conduct, we view the evidence in its light most favorable to the defendant. See *Commonwealth* v. *Kendall*, 451 Mass. 10, 11 (2008) (necessity defense instruction); *Commonwealth* v. *Espada*, 450 Mass. 687, 690 (2008) (self-defense instruction). Beginning with the defendant's own testimony, we find it provides him no assistance because he claimed that he offered no resistance at all as opposed to segmented episodes of resistance. See *Commonwealth* v. *Grandison*, 433 Mass. 135, 143-147 (2001). Similarly unhelpful to the defendant is Trooper Solimini's testimony, which described the defendant's continuous course of resistance. Trooper Cameron testified that when he arrived, the handcuffed defendant was "becoming unruly, [and] was shouting and yelling." Upon her arrival, Trooper Carney testified that she saw the defendant standing on the sidewalk handcuffed. "As [she] turned her attention to the females in the motor vehicle," she noticed the defendant causing a "commotion," "[r]esisting, struggling [and] not being cooperative," as the troopers tried to put him in the cruiser. Thus, in the light most favorable to the defendant, there may have been a brief pause in the defendant's resistive effort. However, as we determine below, this is insufficient to justify the requested instruction.

"An arrest occurs where there is (1) 'an actual or constructive seizure or detention of the person, [2] performed with the intention to effect an arrest and [3] so understood by the person detained.' " *Id.* at 145, quoting from *Commonwealth* v. *Cook*, 419 Mass. 192, 198 (1994). For purposes of G. L. c. 268, § 32B, the act of preventing, or attempting to prevent, the effecting of an arrest does not invite a snapshot of a moment in time that is deemed to be "the arrest" after which the defendant's behavior becomes wholly irrelevant.[4] Rather, effecting an arrest is a process

at trial. The defendant claims that the judge saved his rights when she denied the request at the charge conference, which obviated any need for him to object again when the instruction was not given. See *Commonwealth* v. *Grenier*, 415 Mass. 680, 686 n.8 (1993). Because we determine there was no error in denying the request, we need not decide whether it was properly preserved.

[4] General Laws c. 268, § 32B, states in relevant part:

"(*a*) A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official

that begins when the above three criteria are present and ends when the person is fully detained by his submission to official force or placed in a secure location from which he can neither escape nor harm the police officer or others nearby.

Contrary to the defendant's claim, his arrest was not complete at the point when he was ordered out of the car or even when he was handcuffed. See *Commonwealth* v. *Katykhin*, 59 Mass. App. Ct. 261, 262-263 (2003). Although he had been seized in the constitutional sense when he was handcuffed, the defendant's arrest had not been "effect[ed]," within the "meaning of G. L. c. 268, § 32B, at least until he was fully detained in the cruiser." *Id.* at 263. His aggressive resisting conduct, "immediately [before and] after being handcuffed, prevented and preceded the conclusion of" his arrest. *Ibid.* For the purposes of G. L. c. 268, § 32B, the defendant's behavior prevented or attempted to prevent the State troopers from "effecting" his arrest before the arrest was complete. A brief pause in the resistive effort is insufficient to constitute the submission necessary for the arrest to be fully effected. See *Commonwealth* v. *Ocasio*, 71 Mass. App. Ct. 304, 306, 311, cert. denied, 129 S. Ct. 314 (2008) (where defendant was handcuffed for fifteen minutes in apartment before he resisted being placed in police cruiser, that conduct was not "postarrest" where process of "effecting" his arrest continued until he was placed in cruiser).

As he did at trial, the defendant claims his requested instruction was required in light of *Commonwealth* v. *Grandison*, *supra* at 145-146. However, as the trial judge ruled, that reliance is misplaced. In *Grandison*, there were two distinct events of resistance that were separate in time. There, the defendant was first detained and handcuffed at the scene. During this sequence, he stiffened his arms and refused to comply with the officer's request to put his hands behind his back. *Id.* at 143-144. This behavior satisfied the statutory requirements for resisting arrest. *Id.* at 145. He was then brought to the police station, where a scuffle ensued. The court concluded that the defendant had been immobilized

authority, from effecting an arrest of the actor or another, by: (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another."

when he was handcuffed at the scene, and that therefore the arrest had been effected at that time. Consequently, the police station scuffle sequence was postarrest, and could not be considered by the jury in connection with the charge. Because it could not be said with certainty that the jury had relied exclusively on the evidence of the defendant's conduct during the arrest, the court determined that there was a substantial risk of a miscarriage of justice. *Id.* at 147.

Unlike the *Grandison* case, this case does not feature two distinct sequences of resistance separated by an effected arrest. Rather, the defendant's actions here constituted a "continuous course of conduct," which was specifically noted by the *Grandison* court as a circumstance different from the two separate events described in that case. *Ibid.* See *Commonwealth* v. *Katykhin, supra* at 263. Also, even if there was a brief pause in the handcuffed defendant's resistive effort, that pause was insufficient to constitute the submission necessary for his arrest to be fully effected, which did not occur until he was placed in the cruiser. Because there were no separate incidents of resistance as in *Grandison,* an instruction that the jury must not consider postarrest conduct was not only unnecessary, but would have been inappropriate. Contrast *Commonwealth* v. *Conefrey,* 420 Mass. 508, 513 (1995) ("where evidence of separate incidents is offered to the jury and any one incident could support a conviction, a general unanimity instruction may not suffice"). The judge did not err by refusing to give the requested instruction.

*Judgment affirmed.*