COMMONWEALTH *vs.* KEVIN SOUN.

No. 11-P-528.

Bristol. February 15, 2012. - June 21, 2012.

Present: GREEN, BROWN, & AGNES, JJ.

*Resisting Arrest.*

At the trial of a criminal complaint charging the defendant with, inter alia, resisting arrest, the evidence was sufficient to permit a rational jury to find beyond a reasonable doubt that a reasonable person in the defendant's place would have understood that police officers intended to arrest a third person, where, prior to the moment the defendant interceded, the officers had requested that the third person turn around and place his hands behind his back, at which point a reasonable person would not have felt free to walk away; where the officers intended to arrest the third person; and where, in the circumstances, the order by the police to the third person to turn around and place his hands behind his back could not be understood as simply a detention for a threshold inquiry. [33-37]

COMPLAINT received and sworn to in the Fall River Division of the District Court Department on December 31, 2007.

The case was tried before *Robert A. Welsh, III*, J.

*Elena M. Rosnov* for the defendant.

*Tara L. Blackman*, Assistant District Attorney, for the Commonwealth.

AGNES, J. The defendant, Kevin Soun, was convicted by a jury of assault and battery on a police officer in violation of G. L. c. 265, § 13D, and resisting arrest in violation of G. L. c. 268, § 32B. The defendant moved unsuccessfully for a required finding of not guilty on the charge of resisting arrest at the close of the Commonwealth's case. The principal issue on appeal is whether an order by the police to turn around and place one's hands behind one's back is sufficient to satisfy the prong of the resisting arrest statute that requires the Commonwealth to prove that a reasonable person understood that an arrest was being effected. We answer that question, "Yes."

*Factual background.*[1] Fall River police Officers Dennis Gagne and Athanasios Parousis were dispatched to a residential building on Danforth Street on a reported disturbance around 3:30 A.M. on December 29, 2007. Upon arrival, the officers heard screaming and shouting coming from the first-floor apartment. Officer Parousis knocked on the apartment door and identified himself and Gagne as police officers. A third police officer, John Rose, arrived around that time. Officer Parousis's knocking initially received no response but then received a belligerent verbal outburst. When Officer Parousis continued knocking, a male, later identified as Brian Soun, "ripped open" the door. Brian[2] was moving aggressively and swore at the officers. He did not step back to let the officers into the apartment upon the officers' request. Eventually Officer Parousis moved toward Brian, who then backed up into the living room.

Suddenly, the defendant, who is Brian's father, emerged with a group of people from another room in the apartment. At about the same time, Officer Parousis told Brian to turn around and put his hands behind his back.[3] It was Parousis's intent to handcuff Brian, due to his aggressive behavior.[4] The defendant placed himself between the police officers and Brian, and stated repeatedly, "No, that's my son." The defendant would not step aside when Officers Gagne and Parousis asked him to do so. When Officer Gagne tried to help Officer Parousis handcuff Brian, the defendant pushed Officer Gagne on the chest with enough force to knock him back "a step and a half." In response, Officer Gagne spun the defendant around, pushed him onto a futon, and handcuffed him. The defendant then was taken from the apartment. Afterwards, Officer Parousis arrested Brian.

*Discussion.* We apply the familiar *Latimore* test. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979).

"A defendant resists arrest if 'he knowingly prevents or

---

[1]Because this is an appeal of the denial of a motion for a required finding, the facts are stated in the light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979).

[2]We refer to Brian by his first name to avoid confusion.

[3]Officer Gagne testified to this at trial. Officer Parousis was not questioned on the point.

[4]Officer Gagne testified that Officer Parousis "was about to put the handcuffs on [Brian] and place him under arrest."

attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another.' " *Commonwealth* v. *Tavernier*, 76 Mass. App. Ct. 351, 356 (2010), quoting from *Commonwealth* v. *Grant*, 71 Mass. App. Ct. 205, 208 (2008). See G. L. c. 268, § 32B(*a*). "[T]he crime [of resisting arrest] is committed, if at all, at the time of the 'effecting' of an arrest." *Commonwealth* v. *Grandison*, 433 Mass. 135, 145 (2001), quoting from G. L. c. 268, § 32B. An arrest is effected when there is "[1] 'an actual or constructive seizure or detention of the person, [2] performed with the intention to effect an arrest and [3] so understood by the person detained' " (*Grandison* elements). *Ibid.*, quoting from *Commonwealth* v. *Cook*, 419 Mass. 192, 198 (2004). The parties agree that the statute requires that when a person is accused of resisting the arrest of another, *the person accused* must understand that the police intend to arrest the other individual.

1. *Effecting an arrest is a process.* The defendant contends that a rational jury could not find him guilty of resisting arrest because Brian was not arrested until some time after the defendant was arrested and thus his actions of interceding between the officers and Brian were not at the time the police were effecting an arrest.[5] This contention is based on a misunderstanding of the law.

The event of effecting an arrest does not begin and end at the moment an individual is placed in handcuffs and told that he is under arrest. Effecting an arrest "is a process that begins when the . . . three [*Grandison*] criteria are present and ends when the person is fully detained by his submission to official force or placed in a secure location from which he can neither escape nor harm the police officer or others nearby." *Commonwealth* v. *Knight*, 75 Mass. App. Ct. 735, 738-739 (2009).[6] Thus, the fact

---

[5]The defendant does not contest that, under G. L. c. 268, § 32B(*a*), he can be convicted of resisting the arrest of another, in this case, Brian.

[6]We have stated previously that the process of effecting an arrest does not

that the police did not finish effecting the arrest of Brian until a later time does not mean they had not started effecting that arrest when the defendant interceded.

2. *Application of* Grandison *elements.* We examine whether the defendant's conduct prior to any explicit statement that Brian was under arrest or the handcuffing of Brian was sufficient for a rational jury to convict the defendant of resisting arrest.

a. *Proof of seizure.* A rational jury could find that Brian had been seized prior to the moment the defendant interceded. A seizure, for the purposes of resisting arrest, occurs when a reasonable person, "in view of all the circumstances surrounding the incident, . . . would have believed that he was not free to leave." *Commonwealth* v. *Powell*, 459 Mass. 572, 577 (2011), quoting from *Commonwealth* v. *Franklin*, 456 Mass. 818, 820 (2010). At the time the defendant stepped between the officers and Brian, Officer Parousis already had requested that Brian turn around and place his hands behind his back.[7] Lesser actions by police officers have been considered seizure. See, e.g., *Commonwealth* v. *Narcisse*, 457 Mass. 1, 6 (2010) (defendant seized when officers told him they intended to pat frisk him). A reasonable person would not have felt free to walk away when

end at the point someone is handcuffed or told they are under arrest. *Commonwealth* v. *Katykhin*, 59 Mass. App. Ct. 261, 262 (2003) ("Contrary to the defendant's claim, his arrest was not complete at the point that he was handcuffed"). Likewise, conduct preceding the immediate moment in which someone is being handcuffed and explicitly being told he is under arrest can constitute resisting arrest because the police already have begun effecting an arrest. See, e.g., *Commonwealth* v. *Powell*, 459 Mass. 572, 580-581 (2011) (police were effecting arrest where they pursued defendant, defendant pulled his weapon, and police pulled their weapons, pointed them at defendant, and told defendant to "[d]rop it"); *Commonwealth* v. *Montoya*, 73 Mass. App. Ct. 125, 128 (2008), *S.C.*, 457 Mass. 102 (2010) (police effecting arrest when officers confronted defendant after chase with weapons drawn and ordered him to raise his arms and step away from set of stairs); *Commonwealth* v. *Knight*, *supra* at 739 (defendant's resistance to being handcuffed prevented and preceded conclusion of police effecting his arrest). Contrast *Commonwealth* v. *Grant*, 71 Mass. App. Ct. at 210 (police were effecting arrest when they ordered defendant to "get on the ground" after police pursuit in car and on foot).

[7]The fact that Officer Parousis himself did not testify that he requested Brian to turn around and place his hands behind his back is immaterial. See *Commonwealth* v. *Semedo*, 456 Mass. 1, 8 (2010) (in making sufficiency of evidence determination, "we do not weigh the supporting evidence against conflicting evidence, nor do we consider the credibility of the witnesses").

Officer Parousis ordered him to turn around and place his hands behind his back.

b. *Proof of intent to effect an arrest.* In view of the direct testimony by Officer Gagne of the officers' intent to arrest Brian, no serious argument can be made that the second *Grandison* element was not met.

c. *Understanding of person accused.* The test to determine whether a person understood that he was observing someone being arrested is an objective one, i.e., "what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes." *Commonwealth* v. *Montoya*, 73 Mass. App. Ct. 125, 127 (2008), *S.C.*, 457 Mass. 102 (2010), quoting from *Massachusetts Gen. Hosp.* v. *Revere*, 385 Mass. 772, 778 (1982), rev'd on other grounds, 463 U.S. 239 (1983).

The "police do not need to use the word 'arrest' in order for there to be an arrest." *Commonwealth* v. *Quintos Q.*, 457 Mass. 107, 111 (2010). Other phrases and situations commonly associated with arrest can create the required level of understanding. See, e.g., *Commonwealth* v. *Grant*, 71 Mass. App. Ct. at 210 (while flight from investigative encounter not sufficient to support charge of resisting arrest, there was sufficient understanding of intent to arrest where police drew gun and ordered defendant to "get to the ground" after chasing him).

We have not previously held that an order to turn around and place hands behind one's back was sufficient to allow an ordinary person to understand that an arrest was being effected. Cf. *Commonwealth* v. *Smith*, 55 Mass. App. Ct. 569, 574-575 (2002) (statement by police officer to defendant standing with group in alleyway to stop, even when repeated, was only attempt to seize or to detain person for threshold inquiry). However, viewed objectively, such an order is commonly associated with the initial phase of an arrest, as is shown by the facts of many reported cases. See, e.g., *Commonwealth* v. *Grandison*, 433 Mass. at 143-144;[8] *Commonwealth* v. *Collins*, 11 Mass. App. Ct. 126, 130 (1981); *Commonwealth* v. *Medina*, 43 Mass. App.

---

[8]While *Grandison* concerned resisting arrest, there did not appear to be any dispute that the police already had begun effecting an arrest at the time they told the defendant to place his hands behind his back. It thus does not dispose of the issue presented in this case.

Ct. 534, 535 (1997); *Commonwealth* v. *Carnell*, 53 Mass. App. Ct. 356, 357 (2001); *Commonwealth* v. *Maylott*, 65 Mass. App. Ct. 466, 467 (2006). But see *Commonwealth* v. *Knight*, 75 Mass. App. Ct. at 736 (order to defendant "to turn around and place his hands behind his back so [the officer] could pat frisk him for weapons"). This order corresponds with the fact that officers often cuff a defendant's hands behind his back when they arrest him, as also shown by the facts of many reported cases. See, e.g., *Commonwealth* v. *Estremera*, 383 Mass. 382, 384 (1981); *Commonwealth* v. *Dunn*, 407 Mass. 798, 802 (1990); *Commonwealth* v. *Clermy*, 421 Mass. 325, 327 (1995); *Commonwealth* v. *Rider*, 8 Mass. App. Ct. 775, 776 (1979); *Commonwealth* v. *Downs*, 53 Mass. App. Ct. 195, 196 (2001).

Here, in light of the defendant's belligerence, the close quarters of the apartment, and the number of people in proximity to the officers, a police command to turn around and put one's hands behind one's back reasonably could not be understood as simply a detention for a threshold inquiry. Viewing the evidence in the light most favorable to the Commonwealth, a rational trier of fact could find beyond a reasonable doubt that a reasonable person in the defendant's place would understand that the police intended to arrest Brian when the police ordered him to turn around and place his hands behind his back after a tense situation in which Brian yelled at them, made threatening gestures at them, and ignored several police commands.

*Judgment affirmed.*