NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-849

COMMONWEALTH

vs.

CORNELIO L. CONLEY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Cornelio L. Conley, was convicted after a jury trial in the Boston Municipal Court of one count of assault and battery on a police officer and one count of resisting arrest. On appeal, he challenges only his conviction for resisting arrest, arguing that the evidence was insufficient and that two leading questions to the Commonwealth's police officer witnesses created a substantial risk of a miscarriage of justice. We affirm.

Background. A number of Boston police officers were dispatched to the Boston Public Library. The first to arrive, Officer Arthur Green, who was in uniform, told the defendant "to turn around and put his hands behind his back." While Green did

not tell the defendant that he was under arrest, he testified that "when you place somebody under arrest, you tell them to turn around and put their hands behind their back." The defendant did not comply; instead, he "[w]hipped" a tarp in Green's direction, hitting him in the face. Green then sprayed the defendant with pepper spray. The defendant, moving away from Green, struck another responding officer, Green's partner, in the face. The officers pursued the defendant, and a prolonged struggle took place; after more officers arrived on the scene, they were able to place the defendant in handcuffs. Multiple officers sustained injuries during the altercation that required medical treatment. The defendant also suffered injuries to his face and ribs.

Discussion. 1. Sufficiency of the evidence. The defendant contends the evidence was insufficient to support his conviction of resisting arrest. We review the evidence in the light most favorable to the Commonwealth to determine whether any rational jury could have found the defendant guilty beyond a reasonable doubt. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

"[T]he crime [of resisting arrest] is committed, if at all, at the time of the 'effecting' of an arrest." Commonwealth v. Grandison, 433 Mass. 135, 145 (2001), quoting G. L. c. 268,

2

§ 32B.  An "arrest" requires satisfaction of all three of the so-called "Grandison elements":  "[1] an actual or constructive seizure or detention of the person, [2] performed with the intention to effect an arrest and [3] so understood by the person detained."  Commonwealth v. Soun, 82 Mass. App. Ct. 32, 34 (2012), quoting Grandison, supra.

The defendant argues a rational jury could not have found that police had effected an actual arrest -- only a mere investigatory, or Terry-type stop -- at the time the defendant put up the alleged resistance.  See Commonwealth v. Grant, 71 Mass. App. Ct. 205, 209 (2008) ("Fleeing from, or even resisting, a stop or patfrisk does not constitute the crime of resisting arrest"); Commonwealth v. Smith, 55 Mass. App. Ct. 569, 574 (2002) ("A stop for purposes of making a threshold inquiry is not an arrest").  The defendant contends the arrest did not occur until the officers placed him in handcuffs, and because the evidence does not include any acts of resistance after this point, his motion for a required finding of not guilty should have been allowed.

"In view of the direct testimony by [officer witness] of the officers' intent to arrest" the defendant, we think "no serious argument can be made that the second Grandison element was not met."  Soun, 82 Mass. App. Ct. at 36.  Contrast Smith,

3

55 Mass. App. Ct. at 575-576 (evidence insufficient to support conviction of resisting arrest where responding officer "testified that his intent at the time was only to make a threshold inquiry").  We focus on the first and third Grandison elements.

a.  Proof of seizure.  "[A]n arrest may occur even if the police do not make a formal arrest."  Commonwealth v. Sanderson, 398 Mass. 761, 766 (1986).  Furthermore, "police do not need to use the word 'arrest' in order for there to be an arrest . . . Rather, the test is whether a reasonable person would have understood that he was under arrest."  Commonwealth v. Quintos Q., 457 Mass. 107, 111 (2010).  Here, the jury could have found that when Green approached the defendant and told him "to turn around and put his hands behind his back," a reasonable person in the defendant's position would have understood that Green intended to effect an arrest by handcuffing him.  See Soun, 82 Mass. App. Ct. at 35-36 ("A reasonable person would not have felt free to walk away when Officer Parousis ordered him to turn around and place his hands behind his back").

b.  Understanding of person accused.  "The standard for determining whether a defendant understood that he was being arrested is objective -- whether a reasonable person in the defendant's circumstances would have so understood."  Grant, 71

Mass. App. Ct. at 208.  "While it is not necessary to use the word 'arrest' when taking a defendant into custody, in most instances there is some form of communication between the police officer and the person" (quotations and citations omitted).  Id. at 209.  See Soun, 82 Mass. App. Ct. at 36 ("Other phrases and situations commonly associated with arrest can create the required level of understanding").

In this case, following the officer's order to the defendant to turn around and put his hands behind his back -- which "viewed objectively . . . is commonly associated with the initial phase of an arrest," Soun, 82 Mass. App. Ct. at 36 -- the defendant acted belligerently toward officers, was pepper sprayed and pursued, and engaged in a physical struggle with multiple responding officers.  Considering this combination of circumstances in the light most favorable to the Commonwealth, "a police command to turn around and put one's hands behind one's back reasonably could not be understood as simply a detention for a threshold inquiry."  Id. at 37.  The evidence permitted the jury to find that a reasonable person in the defendant's shoes would have understood he was under arrest before he "[w]hipped" the tarp at Green, and certainly by the time he struck the second officer and engaged in a struggle that

5

injured several others.  The evidence was sufficient to support the conviction of resisting arrest.

2.  <u>Leading questions</u>.  The defendant also argues his conviction for resisting arrest should be reversed because the prosecutor asked leading questions to two officers, eliciting hearsay testimony that they responded to the library because of an "incident."

Prior to trial, the defendant filed a motion in limine to preclude police witnesses from testifying about the content of the 911 call or the police radio dispatch to which they responded.  The judge allowed the motion, specifically rejecting the prosecutor's suggestion to ask about responding to a "disturbance"; rather, the judge told the prosecutor to "have the officers testify that as a result of a radio call they responded to the Boston Public Library."

At trial, the prosecutor asked the first witness, Officer Robert Lerro, whether he "respond[ed] to an incident" at the library; he answered, "Yes, ma'am."  Similarly, the prosecutor asked Green whether he "respond[ed] to an incident," and he said he did.  She then asked, "[H]ow are you alerted to an incident?" He responded, "It was a radio call."  The defendant did not object, and now asserts that the testimony was admitted in error, creating a substantial risk of a miscarriage of justice.

We discern no error.  It was proper for the officers to testify "that [they] arrived at the area as a result of a radio dispatch."  Commonwealth v. Wilson, 441 Mass. 390, 400 (2004).  See Commonwealth v. Cohen, 412 Mass. 375, 393 (1992), quoting McCormick on Evidence § 249, at 734 (3d ed. 1984) ("an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct").  And it was not improper for the prosecutor to use the word "incident." The word was sufficiently anodyne to avoid prejudicing the defendant while establishing a foundation for the officers' presence at the library that day.  See Commonwealth v. Parreira, 72 Mass. App. Ct. 308, 320 n.13 (2008) (not error for prosecutor to use "incident" to refer to alleged rapes).  The lack of an objection from defense counsel, who had focused on this issue prior to trial and obtained a favorable ruling from the judge, suggests that the manner of questioning did not prejudice the defendant.  See Commonwealth v. Lyons, 426 Mass. 466, 471 (1998).

By asking brief, leading questions, the prosecutor ensured that the officers did not testify about the content of the dispatch.  "The allowance of leading questions is almost wholly within the discretion of the trial judge."  Commonwealth v.

7

Blondin, 324 Mass. 564, 573 (1949), cert. denied, 339 U.S. 984 (1950). The way the questions were framed ensured that the officers would not "relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports" (quotation and citation omitted), not relevant to establish the reason for the police presence. Commonwealth v. Rupp, 57 Mass. App. Ct. 377, 383 (2003) (permissible for police officer to testify he received radio transmission "[r]egarding a firearm").

The prosecutor's questioning and the officers' testimony were proper. "Where there is no error, . . . there can be no risk of a miscarriage of justice." R.B., petitioner, 479 Mass. 712, 718 (2018), citing Commonwealth v. Randolph, 438 Mass. 290, 303 (2002).

Judgments affirmed.

By the Court (Massing,
Sacks & Allen, JJ.[1]),

Clerk

Entered: January 15, 2026.

---

[1] The panelists are listed in order of seniority.